No. 13-3067

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

HAWKES CO., INC., LPF PROPERTIES, LLC,
and PIERCE INVESTMENT COMPANY,

Appellants,

v.

U.S. ARMY CORPS OF ENGINEERS,

Respondent.

On Appeal from the United States District Court
for the District of Minnesota
Honorable Ann D. Montgomery, District Judge

**APPELLANTS' OPENING BRIEF**

M. REED HOPPER
DAMIEN M. SCHIFF
  Pacific Legal Foundation
  930 G Street
  Sacramento, California 95814
  Telephone:  (916) 419-7111
  Facsimile:  (916) 419-7747
  Email:  mrh@pacificlegal.org
  Email:  dms@pacificlegal.org

Attorneys for Appellants

## SUMMARY OF THE CASE AND
## REASONS FOR ORAL ARGUMENT

This is a challenge to a Jurisdictional Determination (JD), or wetlands delineation, issued by the U.S. Army Corps of Engineers concluding that peat found on Appellants' property is subject to the Clean Water Act because these areas have a purported "significant nexus" with downstream "navigable waters." Appellants contest this conclusion as contrary to the Act and Supreme Court precedent and seek to have the JD overturned under the Administrative Procedure Act. Upon filing of the complaint, for declaratory and injunctive relief, the Corps filed a motion to dismiss for lack of subject matter jurisdiction claiming the JD was not final agency action under the APA and the case was not ripe. The district court held for the Corps and dismissed the case for lack of final agency action. The court did not address the ripeness issue.

This is a case of first impression in the Eighth Circuit and turns on the recent Supreme Court decision in *Sackett v. EPA*, ___ U.S. ___, 132 S. Ct. 1367 (2012). The trial court relied on prior case law that Appellants contend is no longer good law in light of *Sackett*. For this reason, Appellants believe that oral argument will aid this Court in resolving this issue and respectfully request 20 minutes to state their case.

Appellate Case: 13-3067    Page: 2    Date Filed: 11/08/2013 Entry ID: 4094652

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eighth Cir. R. 26.1A, Plaintiffs Hawkes Co., Inc.; LPF Properties, LLC; and Pierce Investment Co., affirm that they are privately held companies and no parent corporation or publicly held corporation owns 10% or more of their stock.

Appellate Case: 13-3067    Page: 3    Date Filed: 11/08/2013 Entry ID: 4094652

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND REASONS FOR ORAL ARGUMENT . . . . . i

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   I.   THE JURISDICTIONAL DETERMINATION
       IS FINAL AGENCY ACTION UNDER THE APA . . . . . . . . . . . . . . . . . 10

      A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.  A Jurisdictional Determination Marks the
          Consummation of the Corps' Decision-Making Process . . . . . . . . . . . 10

      C.  Legal Consequences Flow from the Jurisdictional Determination . . . . 16

      D.  A Jurisdictional Determination Is an Actual
          Adjudicative Decision That Fixes Rights or Obligations . . . . . . . . . . . 18

          1.   The Jurisdictional Determination
              Imposes Legal Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Appellate Case: 13-3067    Page: 4    Date Filed: 11/08/2013 Entry ID: 4094652

2.  The Jurisdictional Determination
    Denies Appellants a Legal Right . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

3.  The Jurisdictional Determination
    Fixes a Legal Relationship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

II. THIS CASE IS RIPE FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

A. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B. The Justiciability of the Jurisdictional
   Determination Is Fit for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

C. The Hardship to the Appellants of
   Withholding Review Is Severe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) . . . . . . . . . . . . . . . . . 30

Appellate Case: 13-3067    Page: 5    Date Filed: 11/08/2013 Entry ID: 4094652

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*,
  645 F.3d 954 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Belle Co., LLC v. U.S. Army Corps of Engineers*,
  No. 12-247-BAJ-SCR, 2013 WL 773730 (M.D. La. Feb. 28, 2013) . . . . . . . . . 8

*Bennett v. Spear*, 520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . 5, 10, 11, 15, 16, 21

*Chicago and Southern Air Lines, Inc. v. Waterman
  Steamship Corp.*, 333 U.S. 103 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

*CropLife Am. v. EPA*, 329 F.3d 876 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 27

*Fairbanks North Star Borough v. U.S. Army
  Corps of Engineers*, 543 F.3d 586 (9th Cir. 2008) . . . . . . . . . . 2, 5, 9, 14-16, 20

*Frozen Food Express v. United States*, 351 U.S. 40 (1956) . . . . . . . . . . . . . . 19-20

*Gen. Elec. Co. v. EPA*, 290 F.3d 377 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 24

*Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013) . . . . . 2, 24-25, 27-28

*Molycorp, Inc. v. EPA*, 197 F.3d 543 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 24

*Nebraska Public Power District v. MidAmerican
  Energy Co.*, 234 F.3d 1032 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26

*Port of Boston Marine Terminal Ass'n v.
  Rederiaktiebolaget Transatlantic*, 400 U.S. 62 (1970) . . . . . . . . . . . . . . . . . . 19

Appellate Case: 13-3067     Page: 6     Date Filed: 11/08/2013 Entry ID: 4094652

*Public Water Supply District No. 10 of Cass
   County v. City of Peculiar*, 345 F.3d 570 (8th Cir. 2003) . . . . . . . . . . . 2, 26-27

*Rapanos v. United States*, 547 U.S. 715 (2006) . . . . . . . . . . . . 3-4, 6-7, 17, 23, 28

*Sackett v. EPA*, ___ U.S. ___, 132 S. Ct. 1367 (2012) . . . . 2, 5, 8-16, 18-19, 21-22

*Sackett v. EPA*, 622 F.3d 1139 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Bailey*, 571 F.3d 791 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Deaton*, 332 F.3d 698 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 13

**Statutes**

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   §§ 701-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   § 1931(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   § 2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

33 U.S.C. § 1251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   § 1311(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

   § 1319(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   § 1319(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Appellate Case: 13-3067    Page: 7    Date Filed: 11/08/2013 Entry ID: 4094652

**Page**

§ 1319(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 1319(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

§ 1319(c)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 1362(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 1362(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Energy and Water Development Appropriations Act,
Pub. L. No. 102-377, 106 Stat. 1315 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 13

## Regulations

33 C.F.R. § 320.1(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 14

§ 331.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 331.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

§ 331.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 331.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## Rule

Fed. R. Civ. P. 54(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## Miscellaneous

51 Fed. Reg. 41206 (Nov. 13, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

78 Fed. Reg. 66643 (Nov. 6, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Appellate Case: 13-3067    Page: 8    Date Filed: 11/08/2013 Entry ID: 4094652

## STATEMENT OF SUBJECT MATTER JURISDICTION

This appeal arises from the district court's order of August 1, 2013, granting judgment in favor of Defendant and Respondent U.S. Army Corps of Engineers and the district court's judgment dismissing the complaint of Plaintiffs and Appellants Hawkes Co., Inc.; LPF Properties, LLC; and Pierce Investment Co. on August 1, 2013. Joint Appendix (JA) at 59, 76.

The district court had jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201 (authorizing declaratory relief); 28 U.S.C. § 2202 (authorizing further "necessary or proper relief"); and 5 U.S.C. § 702 (providing for judicial review of agency action under the Administrative Procedure Act). The relevant Property consists of approximately 530 acres of real estate located in New Maine Township, Marshall County, Minnesota. Venue in the district court was proper under 28 U.S.C. § 1931(e)(2) because the Property that is the subject of the action is located within that district.

The district court's entry of judgment dismissing Appellants' complaint constitutes a final judgment resolving all relevant claims under Rule 54(a) of the Federal Rules of Civil Procedure. Appellants filed a timely Notice of Appeal on September 17, 2013, within sixty days of the district court's entry of judgment. JA at 77. The statutory basis for this Court's appellate jurisdiction is 28 U.S.C. § 1291.

Appellate Case: 13-3067     Page: 9     Date Filed: 11/08/2013 Entry ID: 4094652

**STATEMENT OF ISSUES**

1.    Whether the contested Jurisdictional Determination is subject to judicial review under the Administrative Procedure Act as final agency action.

Most apposite cases:

*Chicago and Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103 (1948); *Fairbanks North Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586 (9th Cir. 2008); *Sackett v. EPA*, ___ U.S. ___, 132 S. Ct. 1367 (2012); *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013).

Most apposite statutory provision:

5 U.S.C. §§ 701-706.

2.    Whether the case is ripe for judicial review.

Most apposite cases:

*Nebraska Public Power District v. MidAmerican Energy Co.*, 234 F.3d 1032 (8th Cir. 2000); *Public Water Supply District No. 10 of Cass County v. City of Peculiar*, 345 F.3d 570 (8th Cir. 2003); *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013).

Appellate Case: 13-3067     Page: 10     Date Filed: 11/08/2013 Entry ID: 4094652

## STATEMENT OF THE CASE

The Clean Water Act authorizes the Corps of Engineers to regulate certain discharges to "navigable waters" or "waters of the United States." 33 U.S.C. §§ 1311(a) & 1362(7). The term "navigable waters" has been variously defined by the Corps over the years, but the U.S. Supreme Court redefined the term most recently in *Rapanos v. United States*, 547 U.S. 715 (2006). In *Rapanos*, the plurality defined "navigable waters" as traditional navigable waters (capable of use in interstate commerce) and nonnavigable but relatively permanent rivers, lakes, and streams, as well as abutting wetlands, with a continuous surface water connection to traditional navigable waters. *Id.* at 739-42. In a single, concurring opinion Justice Kennedy opined that the Clean Water Act covered wetlands with a significant physical, biological, and chemical connection with a traditional navigable water. *Id.* at 779. This Court has held that the Corps can establish federal jurisdiction over wetlands under either the plurality's "continuous surface water" test or Justice Kennedy's "significant nexus" test. *See United States v. Bailey*, 571 F.3d 791, 799 (8th Cir. 2009).

Federal regulations authorize the Corps to issue landowners a wetland delineation called a Jurisdictional Determination (JD). *See* 33 C.F.R. § 320.1(a)(6). A JD applies statutory and regulatory standards to determine federal jurisdiction on a particular parcel and involves a detailed site-specific analysis that identifies the

- 3 -

nature and extent of covered waters, including wetlands. A JD is subject to administrative appeal but, when finalized, a JD is conclusive of federal jurisdiction. *See* 33 C.F.R. §§ 331.2, 331.3. Federal regulations state that "[a] determination pursuant to this authorization shall constitute a Corps final agency action." 33 C.F.R. § 320.1(a)(6). Unless exempt, a discharge of a pollutant into jurisdictional waters is prohibited without a federal permit. *See* 33 U.S.C. §§ 1251(a), 1311(a), 1362(6). Failure to obtain a permit for such a discharge exposes the actor to severe liability. A party who discharges dredged or fill material into "navigable waters" without first obtaining a permit is subject to civil and/or criminal penalties of up to $25,000 per day for negligent violations and up to $50,000 per day for knowing violations, and imprisonment for up to three years.[1] *See* 33 U.S.C. § 1319(b) & (c). Criminal liability for violation by a corporate entity extends to responsible corporate officers. *See* 33 U.S.C. § 1319(c)(6).

Obtaining a permit is onerous. According to the Supreme Court, the "average applicant for an individual permit spends 788 days and $271,596 in completing the process, and the average applicant for a nationwide [more general] permit spends 313 days and $28,915—not counting costs of mitigation or design changes." *Rapanos*, 547 U.S. at 721.

---

[1] These penalties have been substantially increased due to inflation. *See* 78 Fed. Reg. 66643 (Nov. 6, 2013)

- 4 -

After an appeal, the Corps issued a final JD to Hawkes in this case concluding that on-site peat areas constituted jurisdictional wetlands because they have a purported "significant nexus" to a downstream traditional navigable waterway. JA at 58. Appellants contest this conclusion and sought to challenge the JD in court under the Administrative Procedure Act (APA). JA at 1. The Corp moved to dismiss the case arguing the JD was not final agency action under the APA and the case is not ripe. JA at 38.

Under the APA, agency action is final if it represents the consummation of agency decision-making on the matter and the action fixes legal rights or obligations. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Below, the Corps argued the JD met neither prong of the APA standard because the JD could be revisited and the JD was advisory only and did not change Appellants legal obligations. Relying on the Supreme Court's recent *Sackett* decision, that held a compliance order was final agency action subject to APA review, Appellants argued the JD is final by its own terms and that the JD changed Appellants' legal rights or obligations because Appellants were now required to obtain an individual federal permit, at great cost, or subject themselves to an enforcement action if they proceeded with their project without a federal permit. However, the trial court relied on the pre-*Sackett* decision in *Fairbanks North Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586 (9th Cir. 2008), and held that while the JD represented the consummation of the Corps'

- 5 -

decision on jurisdiction, the JD did not alter Appellants' legal obligations under the Act. The court did not address the ripeness issue. This appeal followed.

## STATEMENT OF THE FACTS

The subject property (Property) consists of a 530-acre parcel located in New Maine Township, Marshall County, Minnesota. JA at 2. The parcel contains peat (or partially decayed vegetation) that Hawkes intends to harvest and sell. Peat is used for fuel and soil amendment and has wetland characteristics. Therefore, Hawkes met with the Corps to discuss agency jurisdiction. On March 15, 2011, the Corps issued a letter to Hawkes stating the agency had made a "preliminary determination that this wetland is a water of the United States and is regulated by the Corps under Section 404 of the Clean Water Act." JA at 9, 20. Appellants disagreed with this determination and sought clarification. On November 8, 2011, the Corps issued a draft Jurisdictional Determination. JA at 11. The draft JD stated the property was subject to federal jurisdiction because it was connected to the Red River of the North, a traditional navigable water, over 120 miles away, through a series of culverts and unnamed streams. *Id.* The draft JD did not address whether a "significant nexus" existed between the Property and a traditional navigable water.

On December 19, 2011, Hawkes submitted information to the Corps illustrating errors in the draft JD, including the lack of any relatively permanent waterways between the property and the Red River of the North, as the plurality opinion in

- 6 -

*Rapanos* requires. *Id.* On February 7, 2012, the Corps issued an Approved JD basing jurisdiction on a purported "significant nexus" between the Property and the Red River of the North. *Id.* at 12. Hawkes timely appealed the JD. On October 24, 2012, the Review Officer issued an Administrative Appeal Decision finding the appeal had merit and that the administrative record did "not contain sufficient documentation/analysis to support a finding of Clean Water Act jurisdiction." *Id.* More specifically, the Review Officer found:

1.    "The [administrative record] does not contain data supporting flow regime, volume, duration, or frequency from the wetlands to the river. Additionally, the District states that indicators of the transport of energy, materials, and nutrients were observed during a site visit, but there is no quantitative date [sic] given to support the finding." JA at 32 (footnote omitted).

2.    "While the [administrative record] provides information indicating an OHW [*i.e.*, 'ordinary high water'] mark for the unnamed tributary exists, it does not provide sufficient evidence to establish a significant nexus that the number of flow events, volume, duration, and frequency of water flowing through the tributary are such that it has an appreciable effect on the TNW [traditional navigable water]." JA at 35 (footnote omitted).

3.    "The [administrative record] included a description of the stream channel riparian corridor from the unnamed tributary to the TNW. However, the water flow

Appellate Case: 13-3067    Page: 15    Date Filed: 11/08/2013 Entry ID: 4094652

regime information was not sufficient to indicate that a significant nexus exists." JA at 36 (footnote omitted).

On December 31, 2012, the Corps issued a Revised JD stating that this JD is a "final Corps permit [sic] decision in accordance with 33 C.F.R. § 331.10." JA at 13. However, the Revised JD failed to cure the deficiencies noted by the Review Officer on appeal. The Revised JD did not provide any new information that would demonstrate how the property, either quantitatively or qualitatively, significantly affects the physical, biological, and chemical integrity of the Red River of the North located more than 120 miles from the property. JA at 14.

Pursuant to 33 C.F.R. § 331.2, Appellants have exhausted their administrative remedies. The issuance of the Revised JD was the Corps' final determination on Clean Water Act jurisdiction. Accordingly, Appellants commenced this action.

## SUMMARY OF THE ARGUMENT

A Circuit Court has yet to address judicial review of a Jurisdictional Determination, or wetland delineation, since the Supreme Court decision in *Sackett v. Environmental Protection Agency*, ___ U.S. ___, 132 S. Ct. 1367 (2012).[2] That case overturned decades of uniform case law prohibiting judicial review of

---

[2] *But see Belle Co., LLC v. U.S. Army Corps of Engineers*, No. 12-247-BAJ-SCR, 2013 WL 773730 (M.D. La. Feb. 28, 2013), now pending in the Fifth Circuit, No. 13-30262.

Appellate Case: 13-3067     Page: 16     Date Filed: 11/08/2013 Entry ID: 4094652

compliance orders issued pursuant to the Clean Water Act. The Court held unanimously that a jurisdictional decision issued through a compliance order is "final" and subject to judicial review under the Administrative Procedure Act. Like the jurisdictional decision in *Sackett*, the formal Jurisdictional Determination in this case has immediate and direct legal consequences. It is, in fact, an adjudicative decision that applies the law to the specific facts of this case and is legally binding on the agency and the landowner, thereby fixing a legal relationship; the *sin qua non* of "final agency action." Therefore, the Corps' Jurisdictional Determination or JD is justiciable and the government's motion to dismiss should be denied. Moreover, the case is ripe for review.

## ARGUMENT

Relying on a single Ninth Circuit court decision, *Fairbanks North Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, and a list of various district court decisions, the Corps argues its Jurisdictional Determination is not "final agency action" subject to review under the APA. But this claim is without merit as *Fairbanks* and the district court decisions are no longer good law under the recent Supreme Court decision in *Sackett*, wherein the Court held a jurisdictional decision issued through a compliance order *is* subject to judicial review under the APA.

Appellate Case: 13-3067    Page: 17    Date Filed: 11/08/2013 Entry ID: 4094652

# I

## THE JURISDICTIONAL DETERMINATION
## IS FINAL AGENCY ACTION UNDER THE APA

### A. Standard of Review

"The existence of subject-matter jurisdiction is a question of law that this court reviews de novo." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). The test for determining final agency action is generally described as a two-prong analysis: "First, the action must mark the 'consummation' of the agency's decisionmaking process." And second, "the action must be one by which 'rights or obligations have been determined,' " *or* from which " 'legal consequences will flow.' " *Bennett v. Spear*, 520 U.S. at 177-78 (citation omitted). What is often overlooked is that the second prong of the *Bennett* test is written in the disjunctive. Even if new "legal consequences" do not flow, the agency action may still be final if it determines "rights or obligations." Likewise, the action may be final if it fixes a "right" but not an "obligation." *See Sackett*, 132 S. Ct. at 1371. The *Bennett* test provides multiple bases for finding agency action is final.

### B. A Jurisdictional Determination Marks the Consummation of the Corps' Decision-Making Process

*Sackett* is a watershed case that reversed 40 years of lower court case law relating to the reviewability of agency actions under the Clean Water Act. In *Sackett*, the EPA issued a compliance order asserting the Sacketts had filled wetlands to build

- 10 -

a home on their half acre lot near Priest Lake, Idaho, without a federal permit in violation of the Clean Water Act. The compliance order was based on two definitive "Findings and Conclusions:" (1) that the subject lot contained jurisdictional wetlands (*i.e.*, a jurisdictional determination); and (2) that the placement of gravel on the site was an unlawful discharge. Among other things, the compliance order directed the Sacketts to remove the fill and restore the site. Like the Plaintiffs in this case, the Sacketts contested the jurisdictional determination and sought review of that finding in court. The government filed a motion to dismiss for lack of subject matter jurisdiction, which was granted. The Ninth Circuit affirmed. At the time the Supreme Court heard the case, five circuit courts and at least ten district courts had held that compliance orders were not reviewable under the APA, even to challenge agency jurisdiction. *See Sackett v. EPA*, 622 F.3d 1139, 1143 (9th Cir. 2010). But the Supreme Court reversed, unanimously.

Relying on *Bennett*, the Court had no trouble finding that the compliance order "marks the 'consummation' of the agency's decisionmaking process." *Sackett*, 132 S. Ct. at 1372. The reasoning the Court used is instructive. The Court held the order marked the consummation of the agency's decision making process because "the 'Findings and Conclusions' that the compliance order contained were not subject to further agency review." *Id.* Just like the JD in this case.

- 11 -

The "Findings and Conclusions" in *Sackett* included a jurisdictional decision or determination. In fact, that determination was the predicate finding of a violation. This is significant because it was the consummation of the agency's decision-making process *relative to jurisdiction* that informed the Supreme Court's conclusion that the compliance order was justiciable. This is made clear by Justice Ginsburg's concurring opinion.

> Faced with an EPA administrative compliance order threatening tens of thousands of dollars in civil penalties per day, the Sacketts sued "to contest the jurisdictional bases for the order." Brief for Petitioners 9. "As a logical prerequisite to the issuance of the challenged compliance order," the Sacketts contend, "EPA had to determine that it has regulatory authority over [our] property." *Id.*, at 54-55. **The Court holds that the Sacketts may immediately litigate their jurisdictional challenge in federal court. I agree, for the Agency has ruled definitively on that question.**

*Sackett*, 132 S. Ct. at 1374 (Ginsburg, J., concurring) (emphasis added).

So it is in this case; "the Agency has ruled definitively on that question." The Jurisdictional Determination in this case is every bit as conclusive as in the *Sackett* case. In fact, more so.

Unlike the JD in this case, the compliance order issued in *Sackett* was statutorily authorized based on "any information available." "Like the [Clean Air Act], the [Clean Water Act] permits the EPA to issue compliance orders 'on the basis of any information available,' 33 U.S.C. § 1319(a)(3), which presumably includes 'a staff report, newspaper clipping, anonymous phone tip, or anything else that would

- 12 -

constitute 'any information.'" *Sackett v. EPA*, 622 F.3d at 1145 (citation omitted).

That is far less than what is required for the formal, onsite JD at issue here. In accordance with established guidelines, such a JD must be based on an extensive review of the soils, hydrology, and vegetation, including an assessment of the number, location, and seasonality of related waters; the physical, biological, and chemical nature of such waters; the nexus among these waters, and much more.[3] Moreover, unlike a compliance order, a formal JD is subject to administrative appeal, as occurred in this case.

It would be anomalous, therefore, for a court to find that a jurisdictional determination based on "any information," and no administrative appeal, is the consummation of the agency's decision-making process, as the Supreme Court did in *Sackett*, but to hold that a formal JD based on an extensive onsite investigation, and an administrative appeal, is not.

The Supreme Court rejected the claim raised by the government in *Sackett*, and reprised here, that the agency action was merely tentative and subject to change. According to the Court:

As the Sacketts learned when they unsuccessfully sought a hearing, the

_____

[3] To identify jurisdictional wetlands, the Corps uses its 1987 Wetlands Delineation Manual that specifies explicit scientific protocols. *See* Energy and Water Development Appropriations Act, Pub. L. No. 102-377, 106 Stat. 1315, 1324 (1992); *United States v. Deaton*, 332 F.3d 698, 712 (4th Cir. 2003). *See also* JA at 12-13.

- 13 -

> "Findings and Conclusions" that the compliance order contained were
> not subject to further agency review. The Government resists this
> conclusion, pointing to a portion of the order that invited the Sacketts to
> "engage in informal discussion of the terms and requirements" of the
> order with the EPA and to inform the agency of "any allegations
> [t]herein which [they] believe[d] to be inaccurate." App. 22-23, ¶ 2.11.
> But that confers no entitlement to further agency review. The mere
> possibility that an agency might reconsider in light of "informal
> discussion" and invited contentions of inaccuracy does not suffice to
> make an otherwise final agency action nonfinal.

*Sackett*, 132 S. Ct. at 1372.

Nevertheless, the Corps argues in this case that Jurisdictional Determinations, that go through all available administrative appeals, do not mark the consummation of the agency's decision-making process. Such an argument is untenable under *Sackett*. And even before *Sackett*, the argument was rejected by the Ninth Circuit in *Fairbanks*, 543 F.3d at 593.

In that case, the court held a JD marked the end of the agency's decision-making process and represented the Corps' "considered, definite and firm position about the presence of jurisdictional wetlands." *Id.* Like the Jurisdictional Determination in this case, "[a]n approved jurisdictional determination upheld on administrative appeal is the agency's 'last word' on whether it views the property as a wetland subject to regulation under the [Clean Water Act]." *Id.*

The Corps admits that its regulations state a JD is "a Corps final agency action." *See* 33 C.F.R. § 320.1(a)(6). And, the Corps treats it as such. Yet the Corps

- 14 -

claims that these regulations, that have the force of law, simply do not mean what they say. In other words, the word "final" does not mean "final."

In an attempt to bolster this nonsensical construction of the regulations' plain meaning, the Corps cites the preamble to these regulations for the argument that the regulations are simply intended to clarify that "the public can rely on [that jurisdictional] determination as a Corps final agency action," Government memo. at 11 (citing 51 Fed. Reg. 41206, 41207 (Nov. 13, 1986)). But absurdly the government claims the determination is not binding on either the agency or the landowner. How the public can rely on a JD that is not binding on any party is not explained. Nor can it be.

The preamble supports Appellants, not the government. In fact, it makes the Appellants' case as it concedes the ultimate point of law. The JD is legally binding on the Corps and the Appellants so the parties and the public can rely on it.

In *Fairbanks*, as in *Sackett*, the court reviewed the existing case law and rejected the argument, made by the Corps in this case, that JD's are only one step in the permitting process and that the Corps' jurisdictional determination could change. According to the Ninth Circuit, "[n]o further agency decisionmaking on that issue can be expected, a clear indication that the first prong of the *Bennett* finality test is satisfied." 543 F.3d at 593. Therefore, even pre-*Sackett* case law refutes the

- 15 -

government's claim that a JD is not the consummation of the agency's decision making process.

## C. Legal Consequences Flow from the Jurisdictional Determination

In addition to a determination that the agency action marks the "consummation of the agency decisionmaking process," *Bennett* also requires a finding that the agency action fixes "rights or obligations" *or* is an action from which "legal consequences will flow." *Bennett*, 520 U.S. at 177-78. Although the court in *Fairbanks* concluded that legal consequences did not flow from a Jurisdictional Determination, that decision cannot be squared with the Supreme Court's unanimous decision in *Sackett*.

In *Sackett*, the Supreme Court determined legal consequences flowed from the compliance order because: (1) it increased the petitioners' liability "in a future enforcement proceeding;" and (2), it also severely limited "the Sackett's ability to obtain a permit for their fill." *Sackett*, 132 S. Ct. at 1371-72. Similar legal consequences flow from the JD in this case. To wit, the JD, and not the Act, establishes a prima facie violation for discharging fill on the Property without a permit, potentially subjecting Appellants to severe civil and criminal liability in a future enforcement proceeding under both state and federal law. Moreover, the existence of the JD converts an unauthorized discharge from an unknowing or

- 16 -

negligent act into a knowing violation. This change in scienter created by the JD could increase civil and criminal penalties. *See* 33 U.S.C. § 1319(c)(2) (increased penalties for knowing violations).

The Jurisdictional Determination also prohibits Appellants from using the Property for peat mining without a Federal Clean Water Act (section 404) permit. Under the Act itself, a permit is not required because the Property does not satisfy the definition of "navigable waters" (*i.e.*, it lacks a "significant nexus"). Thus, it is the JD that (erroneously) imposes a permitting requirement on Appellants, and not the Act. The legal consequences are severe:

> The burden of federal regulation on those who would deposit fill material in locations denominated "waters of the United States" is not trivial. In deciding whether to grant or deny a permit, the U.S. Army Corps of Engineers (Corps) exercises the discretion of an enlightened despot, relying on such factors as "economics," "aesthetics," "recreation," and "in general, the needs and welfare of the people," 33 CFR § 320.4(a) (2004). The average applicant for an individual permit spends 788 days and $271,596 in completing the process, and the average applicant for a nationwide permit spends 313 days and $28,915—not counting costs of mitigation or design changes. Sunding & Zilberman, The Economics of Environmental Regulation by Licensing: An Assessment of Recent Changes to the Wetland Permitting Process, 42 Natural Resources J. 59, 74-76 (2002).

*Rapanos v. United States*, 547 U.S. at 721 (footnote omitted).

Corps representatives relied on these very facts to dissuade Appellants from pursuing the project emphasizing there was no guarantee that a permit would ever be

- 17 -

granted, and that, even if a permit were to be granted, the process would take many years before it would be completed. *See* JA at 9.

The JD has other, equally severe, consequences for Appellants. Contrary to the government's claims, the JD independently changes the legal milieu reducing the value of the Property, undermining the proposed project, constraining the Property's uses, and increasing costs. These effects are real and can effectively rob the landowner of all viable economic use. Simply depositing a bucket of soil in the wetland areas is a violation of the law. To say that the JD has no legal consequences is to deny the obvious. It is a fiction.

## D. A Jurisdictional Determination Is an Actual Adjudicative Decision That Fixes Rights or Obligations

Before *Sackett*, the courts focused on the independent legal consequences flowing from the agency action while ignoring the alternative basis for determining finality—whether the agency action fixes "rights or obligations." In *Sackett*, the Supreme Court took pains to illustrate that the compliance order not only created independent legal consequences but it also determined a legal obligation:

> Through the order, the EPA " 'determined' " " 'rights or obligations.' " *Bennett v. Spear*, 520 U. S. 154, 178, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S. Ct. 203, 27 L. Ed. 2d 203 (1970)). By reason of the order, the Sacketts have the legal obligation to "restore" their property according to an agency-approved Restoration Work Plan, and must give the EPA access to their property and to "records and documentation related to the conditions at the Site."

- 18 -

App. 22, ¶ 2.7. Also, "'legal consequences . . . flow'" from issuance of the order.

*Sackett*, 132 S. Ct. at 1371.

In *Port of Boston*, cited in *Sackett* above, the Supreme Court had to decide who had primary jurisdiction to review an order by the Maritime Commission and, in the process, the court addressed the standard for determining final agency action. Relevant here is the court's holding that agency orders need not create a new, independent legal consequence to be final.

According to the court, the argument that the Commission's order lacked finality "because it had no independent effect on anyone" had the "hollow ring of another era." 400 U.S. at 70-71. Citing *Frozen Food Express v. United States*, 351 U.S. 40, 44 (1956), the Court concluded that "Agency orders that have no independent coercive effect are common" but that was not the "relevant consideration[] in determining finality." *Port of Boston*, 400 U.S. at 70-71. The relevant consideration, the court stated, was "whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined." *Id.* at 71. In that case, there was "no possible disruption of the administrative process" because there was "nothing else for the Commission to do." *Id.* So it is in this case. No further administrative review of the JD is required or even allowed. In point of

- 19 -

fact, now that the Corps has issued the JD, it will not revisit that determination even during the permit process. *See Fairbanks*, 543 F.3d at 593. In other words, the JD is legally binding on the Corps.

As for agency action that has "no independent coercive effect," an examination of *Frozen Food*, 351 U.S. 40, is helpful because it is analogous to the present case. Frozen Food Express was a motor carrier that transported certain "agricultural commodities" that were exempt from regulation by the Interstate Commerce Commission. When the Commission issued a determination that certain commodities were no longer subject to the agricultural exemption, Frozen Food Express sought to challenge the order in court. In determining the order was final and subject to judicial review, the Supreme Court recited the following facts: (1) that "the determination by the Commission that a commodity is not an exempt agricultural product has an immediate and practical impact on carriers who are transporting the commodities;" (2) that the "order" serves as a warning that transporting these commodities without authorization will subject the carrier to "civil and criminal risks;" (3) when unauthorized transportation occurs, the Commission can issue a cease and desist order enforceable in court; (4) that "[t]he 'order' of the Commission which classifies commodities as exempt or nonexempt is, indeed, the basis for carriers in ordering and arranging their affairs;" and (5), the "determination made by the Commission is not therefore abstract, theoretical, or academic." *Id.* at 43-44.

- 20 -

The Court could have been talking about this case, because the same facts obtain: (1) the binding determination that the Appellants' Property is subject to federal jurisdiction has an immediate and practical effect on Appellants by requiring they obtain a federal permit to use the Property; (2) the JD serves as a warning that anyone filling the wetlands at this site without authorization will be subject to civil and criminal liability; (3) when unauthorized filling occurs, the Corps can issue a cease and desist order enforceable in court; (4) a JD which classifies specific wetlands as subject to federal control is, indeed, the basis for landowners ordering and arranging their affairs; and (5), the JD is "not therefore abstract, theoretical, or academic." In its effect, the JD in this case is virtually indistinguishable from the Commission's determination in *Frozen Food* and the compliance order in *Sackett* that the Supreme Court found final and reviewable.

If that were not enough, consider *Chicago and Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103 (1948), on which *Bennett* relied. *Chicago* held that administrative determinations are reviewable if they "impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." *Id.* at 113. This formulation is helpful in analyzing this case.

- 21 -

## 1. The Jurisdictional Determination Imposes Legal Obligations

In this case, as in *Sackett*, by reason of the Jurisdictional Determination, Appellants have the obligation to obtain a section 404 permit from the Corps if they wish to proceed with their peat mining project. This obligation was only inchoate before the JD was issued. The Clean Water Act only requires a permit for discharges to "navigable waters" generally, which Appellants can show do not exist on their property. In contrast, this JD is an actual adjudicative decision requiring a federal permit for discharges on this specific property. It is a quintessential application of the law to the facts of the case. For the first time, this obligation is now final and conclusive.

The JD also imposes legal obligations on the Corps and the Environmental Protection Agency. These agencies are now obligated to require a permit before authorizing the peat mining project and to seek an enforcement action against anyone who discharges a pollutant to the Property without a federal permit.

## 2. The Jurisdictional Determination Denies Appellants a Legal Right

The Corps claims that the wetlands on Appellants' property are subject to federal jurisdiction under the Clean Water Act because the wetlands have a "significant nexus" to traditional navigable waters. However, Appellants contend that the JD is faulty because, among other things, the government provided no

- 22 -

quantitative or qualitative analysis of such a nexus and the nearest traditional navigable water (the Red River of the North) is 120 miles away. *See* JA at 12-14. Therefore, the JD violates the Clean Water Act itself, the government's own implementing regulations, and the Supreme Court's interpretation of Clean Water Act jurisdiction in *Rapanos*. If the Appellants are correct, they have a legal right to proceed with their peat mining project without a federal section 404 Clean Water Act permit. But because the JD is binding on the issue of federal jurisdiction, Appellants have been denied this right.

### 3. The Jurisdictional Determination Fixes a Legal Relationship

This is perhaps the most telling aspect of the finality analysis. Although the Corps would have this Court believe that a JD is like an administrative warning letter; merely advisory and a restatement of statutory law, nothing could be further from the truth.

The JD in this case is an adjudicative decision not unlike the granting or denial of a section 404 permit. Unlike a warning letter, the JD applies the law to a set of specific facts. It does not simply summarize existing legal requirements. The determination is based on a costly and extensive onsite investigation by the Corps itself. As noted above, the investigator must consider the actual chemical, physical, and biological aspects of the site and draw complex scientific and legal conclusions

- 23 -

from the data gathered. Each investigation is unique. Only an expert in this aspect of the law and science (*i.e.*, the District Engineer) can make the final determination. *See* 33 C.F.R. § 331.9. When the JD is issued, the recipient has the right to an administrative appeal. *Id.* It is unthinkable that the government would create such elaborate procedures and expend such extensive resources on a determination that has no legal effect and was *not* intended to fix a "right or obligation."

In another Clean Water Act case, this Court recently declared that whether a governmental pronouncement is subject to judicial review under the APA will turn on practical considerations. In *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013), this Court had to determine if it had subject matter jurisdiction to review letters issued by the EPA purporting to interpret its Clean Water Act regulations for municipal discharges. Although EPA maintained the letters were not binding and merely restated statutory and regulatory standards, Appellants argued the letters imposed substantive requirements on Appellants in conflict with the Act itself, just as the Appellants argue in this case.

Following the lead of the D.C. Circuit in *Molycorp, Inc. v. EPA*, 197 F.3d 543, 545 (D.C. Cir. 1999), this Court stated its functional analysis should, therefore, focus on "those words and deeds that bind legally or as a practical matter." 711 F.3d at 862 citing. *See also Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002) ("[A]n

- 24 -

agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding or is applied by the agency in a way that indicates it is binding." (citations omitted)). This Court thus held that the EPA letters were subject to judicial review "because they have a binding effect on regulated entities."

> "If an agency acts as if a document issued at headquarters is controlling in the field, if it treats the document in the same manner as it treats a legislative rule, if it bases enforcement actions on the policies or interpretations formulated in the document, if it leads private parties or State permitting authorities to believe that it will declare permits invalid unless they comply with the terms of the document, then the agency's document is for all practical purposes 'binding.'" *Appalachian Power Co.*, 208 F.3d at 1021. In particular, the court in *Appalachian Power* found that the contested agency guidance before it was binding because it reflected "a position [the EPA] plans to follow in reviewing State-issued permits, a position it will insist State and local authorities comply with in settling the terms and conditions of permits issued to petitioners, a position EPA officials in the field are bound to apply." *Id.* at 1022. This reasoning persuades us that the June 2011 and September 2011 letters are binding as well.

*Iowa League of Cities*, 711 F.3d at 863.

So it is in the present case. The JD is controlling in the field. Any permit decision by the Corps (or even the Environmental Protection Agency, which also has certain permitting authority) must comport with the agency's determination that the property contains jurisdictional wetlands. The Corps and EPA can and will base an enforcement action on the JD if Appellants seek to mine the property without a federal permit. And, because the JD itself purports to be final agency action, it leads private parties and others to believe they must accede to the Corps' position. Indeed,

- 25 -

Appellants have already filed an application for such a permit based on the Corps' Jurisdictional Determination. It is hard to conceive of a more compelling case of final agency action.

**II**

**THIS CASE IS RIPE FOR REVIEW**

**A. Standard of Review**

A party seeking review must show both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Pub. Water Supply Dist. No. 10 of Cass County v. City of Peculiar*, 345 F.3d 570, 573-74 (8th Cir. 2003). These factors are considered on a sliding scale, but each must be satisfied to at least a minimal degree. *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000). These factors are satisfied here.

**B. The Justiciability of the Jurisdictional Determination Is Fit for Review**

The Corps' argument that the case is not ripe is without merit. According to the agency, "Until the Corps has acted on Plaintiffs' permit application, any concerns about the possible outcomes of that administrative process, including permit denial or conditions that might be required for issuance, are speculative." Government memo. at 18. This is a correct statement, but irrelevant. Appellants are not seeking to challenge a permit decision. They seek to challenge the Jurisdictional

Appellate Case: 13-3067   Page: 34   Date Filed: 11/08/2013 Entry ID: 4094652

Determination which requires them *to obtain a permit* to proceed with their peat mining project. More specifically, they seek to challenge the Corps' assertion of federal jurisdiction over the Property based on the JD. There is nothing speculative about that.

As noted above, the decision is final and all relevant facts are set forth in the administrative record. No further factual development is required. Appellants' challenge to the JD is a question of law and will turn on summary judgment. *See Iowa League of Cities v. EPA*, 711 F.3d at 867 ("Fitness rests primarily on whether a case would 'benefit from further factual development,' and therefore cases presenting purely legal questions are more likely to be fit for judicial review. *Pub. Water Supply*, 345 F.3d at 573."). *See, also*, *CropLife Am. v. EPA*, 329 F.3d 876, 884 (D.C. Cir. 2003) (finding that petitioners presented a "purely legal question" that was ripe for review where "the EPA directive states unequivocally that the agency will not consider *any* third-party human studies"). Here, the Corps has unequivocally stated that Appellants' property is subject to federal regulation under the Clean Water Act. That is a purely legal question fit for judicial review.

## C.  The Hardship to the Appellants of Withholding Review Is Severe

Appellants' peat mining project will require an individual (section 404) permit. As noted above, the "average applicant for an individual permit spends 788 days and

Appellate Case: 13-3067     Page: 35     Date Filed: 11/08/2013 Entry ID: 4094652

$271,596 in completing the process . . . not counting costs of mitigation or design changes." *Rapanos*, 547 U.S. at 521.  If Appellants must wait until a permit is denied, or granted with conditions, to ripen the question whether a permit is required at all, it will cause undue hardship because they can never recover the expense of seeking a permit.  Appellants are required to either seek a prohibitively expensive permit or play a game of Russian roulette with an enforcement action if they proceed without a permit.  This Court recently found such harm sufficient to ripen a Clean Water Act challenge:

> *See Neb. Pub. Power Dist.*, 234 F.3d at 1039 ("Delayed judicial resolution would only increase the parties' uncertainty, and would require [petitioners] to gamble millions of dollars on an uncertain legal foundation.").  Postponing our review until the EPA has denied a permit application in accord with the letters renders a hardship on municipal water authorities, who already would have invested irretrievable funds into their applications.  Therefore, we find that denying judicial review would be a hardship to the parties and that this case evinces the requisite degree of ripeness.

*Iowa League of Cities v. EPA*, 711 F.3d at 868 (citation omitted).  So it is here.

## CONCLUSION

In every relevant sense, the Jurisdictional Determination in this case is as much of a "final agency action" as the compliance order in *Sackett* and should be subject to judicial review under the APA.  *See Iowa League of Cities v. EPA*, 711 F.3d at 868 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967)) ("Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate

- 28 -

and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act . . . must be permitted, absent a statutory bar or some other unusual circumstance . . . .").

DATED: November 8, 2013.

Respectfully submitted,

M. REED HOPPER
DAMIEN M. SCHIFF


By */s/ M. Reed Hopper*
　　　　M. REED HOPPER

Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111

Attorneys for Appellants

- 29 -

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS.

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

 X   It contains 6,752 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii), or

___   It uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This opening brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

 X   It has been prepared in a proportionally spaced typeface using WordPerfect X5 in font style Times New Roman and font size 14, or

___   It has been prepared in a monospaced typeface using WordPerfect X5 with ____ characters per inch and type style _____.

DATED: November 8, 2013.


    */s/ M. Reed Hopper*_____
    Attorney for Appellants

Appellate Case: 13-3067    Page: 38    Date Filed: 11/08/2013 Entry ID: 4094652

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

 /s/ M. Reed Hopper
M. REED HOPPER