No. 13-3067

IN THE UNITED STATES COURT
OF APPEALS FOR THE EIGHTH CIRCUIT

HAWKES CO., INC.; LPF PROPERTIES, LLC;
and PIERCE INVESTMENT COMPANY,
*Plaintiffs-Appellants*,

*v.*

UNITED STATES ARMY CORPS OF ENGINEERS,
*Defendant-Appellee.*

On Appeal from the U.S. District Court
for the District of Minnesota,
No. 13-cv-00107-ADM (Hon. Ann D. Montgomery)

**BRIEF FOR DEFENDANT-APPELLEE
UNITED STATES ARMY CORPS OF ENGINEERS**

ROBERT G. DREHER
 Acting Assistant Attorney General

DANIEL R. DERTKE
JENNIFER SCHELLER NEUMANN
ROBERT J. LUNDMAN
 U.S. Department of Justice
 Environment & Natural Resources Div.
 P.O. Box 7415
 Washington, DC 20044
 Phone: (202) 514-2496
 Fax: (202) 353-1873
 robert.lundman@usdoj.gov

# SUMMARY OF THE CASE

The Clean Water Act, 33 U.S.C. § 1344, establishes a permitting regime through which the United States Army Corps of Engineers (Corps) may issue a permit for certain discharges into wetlands that fall within the Act's jurisdiction. Plaintiffs here have applied for such a permit, but the permit process is not complete. Instead of completing that process, plaintiffs challenge a determination by the Corps that there are wetlands on their property that fall within the Act's jurisdiction. The district court dismissed plaintiffs' complaint, holding that the jurisdictional determination was not final agency action under the Administrative Procedure Act. The court explained that the jurisdictional determination does not impose any legal obligation beyond those imposed by the statute. The court further explained that plaintiffs will be able to challenge jurisdiction either when the permit process is complete or – if they proceed without a permit – as a defense to an enforcement action.

The district court decision is correct and thorough. If the Court believes that oral argument would be helpful, the Corps submits that 15 minutes per side would be sufficient to address the issues.

i

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE ................................................................... 2

STATEMENT OF FACTS ......................................................................... 3

    A.    Statutory and Regulatory Background .................................. 3

        1.    Clean Water Act (CWA) ................................................. 3

        2.    Administrative Procedure Act (APA) .......................... 10

    B.    Facts .................................................................................... 12

    C.    District Court Proceedings ................................................. 13

SUMMARY OF ARGUMENT ................................................................. 18

STANDARD OF REVIEW ....................................................................... 21

ARGUMENT ........................................................................................... 22

    I.    The jurisdictional determination is not "final agency
        action" .................................................................................. 22

        A.    The jurisdictional determination does not determine
            legal rights or obligations and legal consequences do
            not flow from it .............................................................. 23

            1.    The CWA, not the jurisdictional determination,
                imposes obligations on Hawkes .......................... 23

Appellate Case: 13-3067    Page: 3    Date Filed: 12/23/2013 Entry ID: 4108467

2. Requiring a permit application is not a legal consequence or obligation that establishes finality ................................................. 25

3. Hawkes can challenge CWA jurisdiction in court either after a permit decision or in response to an enforcement action, just not now ........................ 29

4. Every court to have addressed whether a jurisdictional determination is final agency action has held that it is not ............................... 32

5. *Sackett v. EPA* addresses an EPA administrative compliance order, which the Supreme Court found final because of consequences that a jurisdictional determination does not have ........ 35

6. The Supreme Court's decisions in *Port of Boston* and *Frozen Foods Express* and this Court's decision in *Iowa League of Cities* address the finality of rules of general applicability, not at all like the Corps' jurisdictional determination ...................................................... 39

B. The Corps' jurisdictional determination does not mark the consummation of the agency's decision-making process .......................................................... 45

II. The jurisdictional determination is not ripe for review ....... 52

CONCLUSION ........................................................ 57

CERTIFICATE OF COMPLIANCE ....................................... 58

CERTIFICATE OF SERVICE ............................................. 59

Appellate Case: 13-3067   Page: 4   Date Filed: 12/23/2013 Entry ID: 4108467

# TABLE OF AUTHORITIES

**CASES:**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ................................................................. 2, 53

*Acquest Wehrle LLC v. United States,*
    567 F. Supp. 2d 402 (W.D.N.Y. 2008) ........................................... 35

*Aluminum Co. v. United States,*
    790 F.2d 938 (D.C. Cir. 1986) ........................................................ 26

*Am. Airlines v. Herman,*
    176 F.3d 283 (5th Cir. 1999) ......................................................... 26

*Auer v. Robbins,*
    519 U.S. 452 (1997) ........................................................................ 49

*Belle Co., LLC v. United States Army Corps of Eng'rs,*
    No. 12-247-BAJ-SCR, 2013 WL 773730
    (M.D. La. Feb. 28, 2013) ................................................................ 34

*Bennett v. Spear,*
    520 U.S. 154 (1997) ......................... 2, 14, 15, 17, 22, 28, 44, 45, 51

*Bowles v. U.S. Army Corps of Eng'rs,*
    841 F.2d 112 (5th Cir. 1988) ......................................................... 30

*Butler v. Bank of Am., N.A.,*
    690 F.3d 959 (8th Cir. 2012) ......................................................... 21

*Califano v. Sanders,*
    430 U.S. 99 (1977) ..................................................................... 2, 53

*Chase Bank USA, N.A. v. McCoy,*
    131 S. Ct. 871 (2011) ..................................................................... 49

Appellate Case: 13-3067    Page: 5    Date Filed: 12/23/2013 Entry ID: 4108467

*Child v. United States,*
    851 F. Supp. 1527 (D. Utah 1994) ........................................... 35, 46

*Christiansen v. W. Branch Cmty. Sch. Dist.,*
    674 F.3d 927 (8th Cir. 2012) ................................................... 45, 54

*Christopher v. SmithKline Beecham Corp.,*
    132 S. Ct. 2156 (2012) ................................................................... 49

*Comm'rs of Public Works v. United States,*
    30 F.3d 129, 1994 WL 399118 (4th Cir. 1994) .............................. 34

*Decker v. Northwest Envtl. Def. Ctr.,*
    133 S. Ct. 1326 (2013) ................................................................... 49

*Exxon Chems. Am. v. Chao,*
    298 F.3d 464 (5th Cir. 2002) ......................................................... 51

*Fairbanks North Star Borough v. U.S. Army Corps of Eng'rs,*
    543 F.3d 586 (9th Cir. 2008) ..2, 10, 15, 24, 26, 29-32, 34, 46, 50, 52

*Frozen Food Express v. United States,*
    351 U.S. 40 (1956) ............................................................. 39, 42-44

*FTC v. Standard Oil Co.,*
    449 U.S. 232 (1980) ..................................................... 24, 26, 27, 46

*Golden and Zimmerman, LLC v. Domench,*
    599 F.3d 426 (4th Cir. 2010) ......................................................... 43

*Greater Gulfport Props., LLC v. U.S. Army Corps of Eng'rs,*
    194 Fed. Appx. 250, 2006 WL 2460884
    (5th Cir. Aug. 23, 2006) ................................................................ 33

*Hampton Venture No. One v. United States,*
    768 F. Supp. 174 (E.D. Va. 1991) ........................................... 35, 51

Appellate Case: 13-3067   Page: 6   Date Filed: 12/23/2013 Entry ID: 4108467

*Industrial Highway Corp. v. Danielson,*
   796 F. Supp. 121 (D.N.J. 1992) ...................................................... 35

*Iowa League of Cities v. EPA,*
   711 F.3d 844 (8th Cir. 2013) ................................... 11, 43, 44, 53, 56

*Lotz Realty Co. v. United States,*
   757 F. Supp. 692 (E.D. Va. 1990).............................................. 35, 51

*Nat'l Ass'n of Home Builders v. Norton,*
   415 F.3d 8 (D.C. Cir. 2005) ........................................................... 28

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior,*
   538 U.S. 803 (2003) ................................................................. 28, 54

*Nat'l Wildlife Fed'n v. Whistler,*
   27 F.3d 1341 (8th Cir. 1994) ........................................................ 30

*Neb. Pub. Power Dist. v. MidAm. Energy Co.,*
   234 F.3d 1032 (8th Cir. 2000) .................................................. 53, 54

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget*
   *Transatlantic,* 400 U.S. 62 (1970)........................... 39, 40, 41, 43, 44

*Pub. Water Supply Dist. No. 10 of Cass Cnty. v. City of Peculiar,*
   345 F.3d 570 (8th Cir. 2003) ........................................................ 53

*Qureshi v. Holder,*
   663 F.3d 778 (5th Cir. 2011) ........................................................ 11

*Rapanos v. United States,*
   547 U.S. 715 (2006) ................................................................... 5, 6

*Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n,*
   324 F.3d 726 (D.C. Cir. 2003) ...................................................... 28

*Rochester Tel. Corp. v. United States,*
   307 U.S. 125 (1939) ...................................................................... 26

vi

*Route 26 Land Dev. Ass'n v. United States,*
    753 F. Supp. 532, 539 (D. Del. 1990),
    *aff'd*, 961 F.2d 1568 (3d Cir. 1992) ...................................... 51, 55, 56

*Sackett v. EPA,*
    132 S. Ct. 1367 (2012) .................................... 9, 16, 17, 19, 30, 35-39

*Sierra Club v. U.S. Army Corps of Engineers,*
    446 F.3d 808 (8th Cir. 2006) ..................................................... 11, 22

*Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs,*
    531 U.S. 159 (2001) ..................................................................... 3, 4

*St. Andrews Park, Inc. v. U.S. Dep't of the Army Corps of Eng'rs,*
    314 F. Supp. 2d 1238 (S.D. Fla. 2004) ................................ 34, 35, 46

*Texas v. United States,*
    523 U.S. 296 (1998) .................................................................. 2, 55

*Thomas v. Union Carbide Agricultural Products Co.,*
    473 U.S. 568 (1985) ......................................................................... 55

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006) ........................................................ 11

*United States v. Bailey,*
    571 F.3d 791 (8th Cir. 2009) ................................................. 6, 10, 31

*United States v. Donovan,*
    661 F.3d 174 (3d Cir. 2011)............................................................. 6

*United States v. Los Angeles & S.L.R.,*
    273 U.S. 299 (1927) .......................................................... 24, 42, 43

*United States v. Riverside Bayview Homes,*
    474 U.S. 121 (1985) ......................................................................... 3

vii

*United States v. Sherwood*,
   312 U.S. 584 (1941) .................................................................. 10

**STATUTES:**

Administrative Procedure Act

   5 U.S.C. § 701(a)(1) ............................................................... 11

   5 U.S.C. § 704 ............................................................... 2, 11, 44

   5 U.S.C. § 706(2) .................................................................. 13

Clean Water Act

   33 U.S.C. § 1251(a) ................................................................. 3

   33 U.S.C. § 1311(a) ............................................................. 4, 23

   33 U.S.C. § 1319 .................................................................. 31

   33 U.S.C. § 1319(a) ................................................................ 9

   33 U.S.C. § 1319(a)(3) ............................................................ 36

   33 U.S.C. § 1319(b) ........................................................... 10, 36

   33 U.S.C. § 1319(c) ............................................................... 10

   33 U.S.C. § 1319(d) ............................................................... 36

   33 U.S.C. § 1319(g) ................................................................ 9

   33 U.S.C. § 1344 ................................................................ 7, 56

   33 U.S.C. § 1344(a) ........................................................... 6, 7, 23

   33 U.S.C. § 1362(6) ................................................................ 4

Appellate Case: 13-3067     Page: 9     Date Filed: 12/23/2013 Entry ID: 4108467

33 U.S.C. § 1362(7) .................................................................... 4, 23

33 U.S.C. § 1362(12) .................................................................. 4, 23

28 U.S.C. § 1291 ............................................................................. 1

28 U.S.C. § 1331 ............................................................................. 1

28 U.S.C. § 2342 ........................................................................... 41

**RULES AND REGULATIONS:**

33 C.F.R. pt. 320 ...................................................................... 7, 23

33 C.F.R. § 320.1(a)(6) ......................................................... 7, 48-50

33 C.F.R. pt. 323 ...................................................................... 7, 23

33 C.F.R. pt. 325 ...................................................................... 7, 23

33 C.F.R. § 325.9 ........................................................................... 7

33 C.F.R. § 326.3(c) ................................................................. 9, 31

33 C.F.R. § 326.3(e)(1)(iv) .................................................... 37, 38

33 C.F.R. § 326.5 ......................................................................... 10

33 C.F.R. § 328.3(a) ................................................................. 4, 23

33 C.F.R. § 328.3(a)(1) .................................................................. 5

33 C.F.R. § 328.3(a)(5) .................................................................. 5

33 C.F.R. § 328.3(a)(7) .................................................................. 5

33 C.F.R. § 328.3(c) ....................................................................... 5

Appellate Case: 13-3067     Page: 10     Date Filed: 12/23/2013 Entry ID: 4108467

33 C.F.R. § 328.5 ........................................................... 47

33 C.F.R. pt. 331 .................................................... 8, 9, 47

33 C.F.R. § 331.1 ............................................................. 9

33 C.F.R. § 331.2 .......................................................... 7-9

33 C.F.R. § 331.3(a) ........................................................ 8

33 C.F.R. § 331.5(a)(2) ............................................... 9, 47

33 C.F.R. § 331.7(a) ........................................................ 8

40 C.F.R. § 232.2 ..................................................... 4, 23

51 Fed. Reg. 41,206 (Nov. 13, 1986) ............................ 49

65 Fed. Reg. 16,486 (March 28, 2000) ................. 47, 50, 55

Fed. R. App. 4(a)(1)(B) .................................................. 1

Fed. R. Civ. P. 12(b)(1) ............................................ 3, 11

Fed. R. Civ. P. 12(b)(6) ........................................ 3, 11, 21

**MISCELLANEOUS:**

13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper,
Federal Practice and Procedure § 3532 (1984) ....................... 55

x

## JURISDICTIONAL STATEMENT

The district court lacked subject matter jurisdiction over this case because plaintiffs Hawkes Co., Inc., LPF Properties, LLC, and Pierce Investment Company (together Hawkes) do not challenge final agency action under the Administrative Procedure Act (APA) and because their claims are not ripe. But for those jurisdictional defects, Hawkes' claim against the United States Army Corps of Engineers (Corps) would present a federal question under 28 U.S.C. § 1331. *See also infra* at 10 n.3 (discussing whether finality requirement is jurisdictional in this Court).

This Court has jurisdiction over Hawkes' appeal from the district court's final judgment pursuant to 28 U.S.C. § 1291.

Hawkes filed a timely notice of appeal on September 17, 2013, from the final judgment of the district court entered on August 1, 2013. JA 76-78; Fed. R. App. 4(a)(1)(B).

## STATEMENT OF THE ISSUES

Hawkes invokes the APA to challenge a determination by the Corps that certain property owned by Hawkes contains "waters of the

1

United States" within the Corps' jurisdiction under the Clean Water Act (CWA). The issues on appeal are:

1. Whether the Corps' informational jurisdictional determination, which both does not impose any legal obligations on Hawkes and is only an initial step in determining whether Hawkes can discharge dredged or fill material into wetlands on its property, is a final agency action.

Most apposite cases: *Fairbanks North Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586 (9th Cir. 2008); *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

Most apposite statutory provision: 5 U.S.C. § 704.

2. Whether the Corps' informational jurisdictional determination is ripe for review.

Most apposite cases: *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *Texas v. United States*, 523 U.S. 296 (1998).

## STATEMENT OF THE CASE

After Hawkes applied to the Corps for a permit that would allow it to mine peat on its property, the Corps considered whether the property contains "waters of the United States" subject to regulation under the

2

Clean Water Act.  The Corps gave its opinion in a "jurisdictional determination" that the property contains waters of the United States. JA 13-14, 58.  Hawkes opted to bring suit to challenge that jurisdictional determination rather than complete the permit process or proceed with peat mining on the property without a permit (risking an enforcement action).  JA 1-19 (amended complaint).  The Corps moved to dismiss for lack of subject matter jurisdiction or, in the alternative, failure to state a claim.  JA 38-39, 59; Fed. R. Civ. P. 12(b)(1), (6).  The district court held that the jurisdictional determination was not final agency action and dismissed the complaint for failure to state a claim. JA 59-79.

## STATEMENT OF FACTS

### A.    Statutory and Regulatory Background

#### 1.    Clean Water Act (CWA)

Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  The Act's stated objectives evince a "broad, systemic view of the goal of maintaining and improving water quality."  *United States v. Riverside Bayview Homes*, 474 U.S. 121, 132 (1985); *see also Solid*

3

*Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 166 (2001). To that end, Section 301(a) of the CWA prohibits the "discharge of any pollutant by any person" except as the CWA specifically allows. 33 U.S.C. § 1311(a). The term "pollutant" is defined to include, *inter alia*, "dredged spoil," "rock," and "sand." *Id.* § 1362(6). The CWA defines the term "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12).

The CWA defines the term "navigable waters" as all "waters of the United States, including the territorial seas." *Id.* § 1362(7). The "waters of the United States" include certain wetlands. The Corps and the United States Environmental Protection Agency (EPA) each have certain regulatory and enforcement authorities under the CWA and have adopted identical regulatory definitions of the term "waters of the United States." 33 C.F.R. § 328.3(a); 40 C.F.R. § 232.2. That definition encompasses traditional navigable waters,[1] which include tidal waters

---

[1] We use this term to avoid confusion between the term "navigable waters" as defined in the CWA and implementing regulations, *see* 33 U.S.C. § 1362(7); 33 C.F.R. § 328.3(a), and the traditional use of the term "navigable waters" to describe waters that are, have been, or could be used for interstate or foreign commerce, *see* 33 C.F.R. § 328.3(a)(1).

4

and waters susceptible to use in interstate commerce, "tributaries" to traditional navigable waters, and wetlands that are "adjacent" to traditional navigable waters or their tributaries. 33 C.F.R. § 328.3(a)(1), (5), (7). The regulations define "adjacent" to "mean[] bordering, contiguous, or neighboring" and add that "[w]etlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like are 'adjacent wetlands.'" *Id.* § 328.3(c).[2]

---

[2] The Supreme Court construed the term "waters of the United States" in *Rapanos v. United States*, 547 U.S. 715 (2006), a case that involved discharges into wetlands adjacent to nonnavigable tributaries of traditional navigable waters. *Id.* at 729 (plurality opinion). All Members of the Court agreed that the term "waters of the United States" encompasses some waters that are not navigable in the traditional sense. *See id.* at 730-31 (plurality opinion); *id.* at 767 (Kennedy, J., concurring in the judgment); *id.* at 792-93 (Stevens, J., dissenting). Four Justices interpreted the term "waters of the United States" as covering "relatively permanent, standing or continuously flowing bodies of water," *id.* at 739 (plurality opinion), that are connected to traditional navigable waters, *id.* at 741-42, as well as wetlands with a continuous surface connection to such water bodies, *id.* at 742. The *Rapanos* plurality noted that its reference to "relatively permanent" waters "d[id] not necessarily exclude streams, rivers, or lakes that might dry up in extraordinary circumstances, such as drought," or "*seasonal* rivers, which contain continuous flow during some months of the year but no flow during dry months." *Id.* at 732 n.5 (emphasis in original).

Appellate Case: 13-3067    Page: 16    Date Filed: 12/23/2013 Entry ID: 4108467

The CWA establishes two complementary permitting regimes through which appropriate federal or state officials may authorize discharges of pollutants into the waters of the United States. The permitting regime implicated in this case is set forth in Section 404(a) of the CWA, 33 U.S.C. § 1344(a). It authorizes the Secretary of the Army, acting through the Corps, or a State with an approved program to issue a permit "for the discharge of dredged or fill material into the navigable waters at specified disposal sites." *Id.* § 1344(a). The other permitting regime, not directly at issue here, is contained in Section 402, which provides that any discharge of pollutants other than dredged

---

Justice Kennedy interpreted the term "waters of the United States" to encompass wetlands that "possess a 'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." *Id.* at 759 (Kennedy, J., concurring in the judgment); *see id.* at 779. The four dissenting Justices, who would have affirmed the court of appeals' application of the pertinent regulatory provisions, also concluded that the term "waters of the United States" encompasses, *inter alia*, all tributaries and wetlands that satisfy either the plurality's standard or that of Justice Kennedy. *See id.* at 809-10 & n.14 (Stevens, J., dissenting).

This Court has held that CWA jurisdiction can be established under the standards set forth by the plurality or by Justice Kennedy. *United States v. Bailey*, 571 F.3d 791, 799 (8th Cir. 2009); *see also, e.g., United States v. Donovan*, 661 F.3d 174, 181 (3d Cir. 2011) (describing this as the majority rule and collecting cases).

6

or fill material generally must be authorized by a permit issued by EPA or an approved State.  *Id.* § 1342.

The Corps has promulgated regulations governing the permit application process under Section 404.  33 C.F.R. pt. 323; *see* 33 C.F.R. pts. 320, 325.  The Corps' regulations provide that the Corps may offer its opinion, when requested, on whether a piece of property contains "waters of the United States" within the Corps' regulatory jurisdiction under the CWA.  33 C.F.R. §§ 320.1(a)(6), 325.9.  Such an opinion is known as a "jurisdictional determination," which the regulations define as "a written Corps determination that a wetland and/or waterbody is subject to regulatory jurisdiction under Section 404 of the Clean Water Act (33 U.S.C. 1344) or [the River and Harbors Act]."  33 C.F.R. § 331.2.

The Corps' regulations provide that the agency may issue two kinds of jurisdictional determinations.  "Preliminary JDs [jurisdictional determinations]" are defined as "written indications that there may be waters of the United States on a parcel or indications of the approximate location(s) of waters of the United States on a parcel."  *Id.* "Preliminary JDs are advisory in nature and may not be appealed."  *Id.* An "approved jurisdictional determination" is "a Corps document

7

stating the presence or absence of waters of the United States on a parcel or a written statement and map identifying the limits of waters of the United States on a parcel." *Id.* An approved jurisdictional determination is valid for five years, 33 C.F.R. pt. 331, App. C, "unless new information warrants revision of the determination before the expiration date, or a District Engineer identifies specific geographic areas with rapidly changing environmental conditions that merit re-verification on a more frequent basis." Regulatory Guidance Letter No. 05-02 (June 14, 2005) (JA 43-45).

An affected party may administratively appeal an approved jurisdictional determination. 33 C.F.R. § 331.2 ("Approved JDs [jurisdictional determinations] are clearly designated appealable actions and will include a basis of JD with the document."); *see also* 33 C.F.R. pt. 331 (detailing administrative appeal process). The appeal is administered by the Corps' Division Engineer, who is assisted by a review officer. *Id.* §§ 331.2, 331.3(a), 331.7(a). The Division Engineer decides the appeal and may instruct the District Engineer who issued the jurisdictional determination to correct procedural errors and reconsider any part of the decision that is insufficiently supported.

8

An affected party may also administratively appeal a final permit decision proffering a permit with conditions or denying a permit pursuant to these same procedures. *Id.* §331.1 (authorizing appeal from denied permits and declined permits); *id.* § 331.2 (defining "declined permit" as a proffered individual permit that an applicant refuses to accept because he objects to the terms and conditions). In that appeal, the party may challenge both the terms of a permit as well as jurisdiction, "whether or not a previous approved JD was appealed." *Id.* § 331.5(a)(2).

If there is a discharge of dredged or fill material without a required permit under Section 404, the Corps or EPA may take a variety of actions in response. The Corps may issue a "cease-and-desist" order or otherwise notify the parties of the violation, and EPA may issue an administrative compliance order, or both may occur. 33 U.S.C. § 1319(a); 33 C.F.R. § 326.3(c); *see also Sackett v. EPA,* 132 S. Ct. 1367 (2012) (holding that an EPA administrative compliance order is a final agency action). EPA may also issue an administrative penalty order. 33 U.S.C. § 1319(g).

Appellate Case: 13-3067    Page: 20    Date Filed: 12/23/2013 Entry ID: 4108467

In addition, the United States may exercise its enforcement discretion by bringing an action in district court. 33 U.S.C. § 1319(b); 33 C.F.R. § 326.5; *see also* 33 U.S.C. § 1319(c) (criminal penalties). This enforcement authority exists for any violation for which EPA could have issued an administrative compliance order, whether or not EPA actually issued any such order. 33 U.S.C. § 1319(b). In such an enforcement action the United States may obtain injunctive relief for a CWA violation for which EPA could have issued an administrative compliance order. *Id.* In an enforcement proceeding, the alleged violator may raise its defenses, including that the United States lacked regulatory authority over the activity at issue. *See, e.g., United States v. Bailey*, 571 F.3d 791, 796-803 (8th Cir. 2009); *Fairbanks North Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 594 & n.9 (9th Cir. 2008).

## 2.    Administrative Procedure Act (APA)

The federal government can only be sued to the extent it has waived its sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other

10

adequate remedy in a court are subject to judicial review." 5 U.S.C.

§ 704. APA review is also not available when other "statutes preclude

judicial review." 5 U.S.C. § 701(a)(1).[3]

---

[3]	There appears to be conflicting authority in this Circuit as to whether the "final agency action" requirement is a condition of the sovereign immunity waiver and thus jurisdictional or instead a limit on the cause of action created by the APA. *Compare Iowa League of Cities v. EPA*, 711 F.3d 844, 863 n.12 (8th Cir. 2013) (noting that APA final agency action and other APA requirements "are part of a party's cause of action and are not jurisdictional"), *with Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 812-15 (8th Cir. 2006) (affirming in part district court dismissal for lack of subject matter jurisdiction where plaintiff could not carry burden of proof of demonstrating final agency action); *see also, e.g., Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) ("If there is no final agency action, a federal court lacks subject matter jurisdiction." (citation omitted)); *Trudeau v. FTC*, 456 F.3d 178, 183-84 (D.C. Cir. 2006) (holding that final agency action requirement is not jurisdictional). Regardless of whether the "final agency action" requirement is jurisdictional or a limit on the APA cause of action, suits that attempt to challenge agency actions that are not final under the APA must fail. *See, e.g., Trudeau*, 456 F.3d at 184-85. As explained below (p. 14), in the district court here, the Corps moved to dismiss Hawkes' claim for lack of jurisdiction under Rule 12(b)(1) or in the alternative for failure to state a claim under Rule 12(b)(6). JA 38, 59. The district court dismissed for failure to state a claim. JA 59-75. This Court thus need not resolve whether the final agency action requirement is jurisdictional because Hawkes' claim must fall within the statutory requirements for judicial review under the APA (including the final agency action requirement) in order for Hawkes to have a cause of action.

Appellate Case: 13-3067     Page: 22     Date Filed: 12/23/2013 Entry ID: 4108467

## B.    Facts

Because this case was decided on the Corps' motion to dismiss, the facts alleged by Hawkes in its complaint are taken as true for purposes of this appeal.  JA 1-37 (amended complaint with attachments).  Plaintiffs Pierce Investment Company and LPF Properties, LLC own a 530-acre parcel in Marshall County, Minnesota.  JA 2 (¶¶ 6, 7).  The property contains peat which plaintiff Hawkes Co., Inc., would like to mine, process, and sell for use in constructing golf course greens.  JA 2-3, 7 (¶¶ 8, 32).  Hawkes Co., Inc. has an existing peat mining operation nearby and would pay royalties to the property owners.  JA 2-3 (¶ 8).

In 2007, a representative of Hawkes met with the Corps to discuss peat mining on the property.  JA 8 (¶¶ 35, 36).  Hawkes applied for a Section 404 permit in December 2010.  In March 2011, the Corps informed Hawkes of the Corps' preliminary determination that the property contains waters of the United States.  JA 8-9 (¶¶ 38, 41).  After further meetings and visits to the property, the Corps provided Hawkes with an Approved Jurisdictional Determination in February 2012, which concluded that the property contains waters of the United States.  JA 9-12 (¶¶ 42-50).  Plaintiffs filed an administrative appeal, and in

Appellate Case: 13-3067     Page: 23     Date Filed: 12/23/2013 Entry ID: 4108467

October 2012 the Corps' Mississippi Valley Division remanded the jurisdictional determination to the Corps' St. Paul District for reconsideration, based on a finding that the administrative record lacked sufficient documentation and analysis to support a finding of regulatory jurisdiction.  JA 12-13 (¶¶ 51-53); JA 25-37.

After the remand, the St. Paul District issued a Revised Approved Jurisdictional Determination in December 2012, which again concluded that the property contains waters of the United States.  JA 13 (¶¶ 54-55); JA 58; JA 42.  Hawkes is attempting to challenge the December 2012 Revised Jurisdictional Determination in this case.  Hawkes has not withdrawn their December 2010 permit application.  JA 8, 14 (¶¶ 38, 57).

## C.    District Court Proceedings

Plaintiffs Hawkes Co., Inc., LPF Properties, LLC, and Pierce Investment Company (together Hawkes) filed an amended complaint on March 13, 2013.  Their amended complaint alleges that the Corps' jurisdictional determination is arbitrary and capricious, contrary to law, and unsupported by substantial evidence, in violation of the APA, 5 U.S.C. § 706(2).  JA 15 (¶ 62).  Count I seeks an order "enjoining the

13

Corps from exercising jurisdiction under the CWA" and Count II seeks a declaration that the jurisdictional determination is invalid and that the Corps does not have regulatory jurisdiction over the property. JA 15-18 (¶¶ 63-79). The Corps moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, arguing that there was no final agency action subject to judicial review under the APA and that Hawkes' challenge to the jurisdictional determination was not ripe. JA 38, 59.

The district court granted the Corps' motion to dismiss for failure to state a claim. JA 59-75. It held that the Corps' jurisdictional determination was not final agency action. The court first set out the two conditions that must be satisfied for an agency action to be considered final under *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997):

> First, the action must "mark the consummation of the agency's decisionmaking process," meaning it must be more than "tentative or interlocutory" in nature. Second, the action must be one "by which rights or obligations have been determined," or one from which "legal consequences will flow."

JA 63 (citations omitted, quoting *Bennett*, 520 U.S. at 177-78). The district court then noted that while the Eighth Circuit has not ruled on this issue, "several other federal courts have held that a

14

jurisdictional determination is not a 'final agency action,' and thus not subject to immediate judicial review." JA 64. The court explained that the Ninth Circuit's reasoning in *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586 (9th Cir. 2008), "illustrates the . . . reasoning for denying judicial review of jurisdictional determinations," and the court then described the Ninth Circuit's reasoning in depth. JA 64-66; *see also* JA 69 ("Neither Plaintiffs nor the Court have identified a single decision contrary to the holding of *Fairbanks* and the other cases cited [by the district court]."). The court then turned to the two *Bennett* conditions.

The court first concluded that the jurisdictional determination "satisfies the first *Bennett* condition." JA 66. The court labeled the determination "a discrete decision." JA 66-68.

The court then concluded that, because the jurisdictional determination "does not determine Plaintiffs' rights or obligations," it "does not satisfy the second *Bennett* condition" and is not a final agency action under the APA. JA 68. "Plaintiffs' jurisdictional determination does not fix their rights or obligations." JA 68. It "does not order Plaintiffs to take any kind of action." JA 68. "The Revised

15

[jurisdictional determination] did not change [the property's] physical characteristics." JA 69. "Nor did it affect the legal standards used by agencies and courts in determining where the CWA applies." JA 69.

The district court then addressed the Supreme Court's decision in *Sackett v. EPA*, 132 S. Ct. 1367 (2012), and explained that "Plaintiffs are unable to demonstrate how *Sackett* applies to jurisdictional determinations." JA 71. *Sackett* addressed an EPA administrative compliance order that "demanded the petitioners restore their property in accordance with a restoration plan set by the EPA, and grant the EPA access to both the land and records at issue." JA 71 (citing *Sackett*, 132 S. Ct. at 1371-72). And "[i]f the petitioners chose to disobey the compliance order, they risked accruing up to $75,000 per day in penalties, which the EPA could recover if it subsequently prevailed in an enforcement action." JA 71 (citing *Sackett*, 132 S. Ct. at 1370). In contrast, "Plaintiffs face no such obligations or changes in their rights as a result of their jurisdictional determination." JA 71. "In this case, the jurisdictional determination has not exposed Plaintiffs to liability, nor made any demands of them." JA 72. In addition, the court reasoned that "unlike the petitioners in *Sackett*, Plaintiffs may

16

pursue a permit without a disadvantage"; "[t]he compliance order 'severely' limited the petitioners' ability to obtain a permit from the Corps" but "the jurisdictional determination has not affected Plaintiffs' ability to pursue a permit."  JA 72.

Finally, the district court stressed that plaintiffs here are not left without an adequate remedy in court.  JA 73-74.  First, plaintiffs can "proceed with the planned development or other alteration without consulting the Corps or the EPA," possibly triggering an enforcement action, but without accruing additional penalties due to a compliance order as in *Sackett*.  JA 73.  Second, "Plaintiffs have the unhindered option of pursuing a permit from the Corps."  JA 74.  Third, "Plaintiffs [can] choose to begin mining without a permit and [if] the government issues a compliance order, Plaintiffs may, as a result of *Sackett's* holding, seek immediate judicial review of the compliance order and resolve the status of their operations."  JA 74.

The district court concluded that "[b]ecause the Revised [jurisdictional determination] does not satisfy both *Bennett* conditions, and because Plaintiffs have [an] 'other adequate remedy in a court,' the

17

determination is not reviewable at this time." JA 74. The court declined to reach the issue of ripeness. JA 74.

## SUMMARY OF ARGUMENT

The district court correctly dismissed Hawkes' complaint. The Corps allows landowners to request the Corps' view on issues of regulatory jurisdiction as an aid to landowners, but a determination that there is regulatory authority has no independent legal consequences. Hawkes' attempt to gain immediate judicial review of such a jurisdictional determination is improper because the determination is not final agency action and because Hawkes' challenge is not ripe.

First, the jurisdictional determination that the Corps issued regarding Hawkes' property is not a final agency action subject to APA review, as all the courts that have addressed this issue have held. A jurisdictional determination does not determine any rights or obligations, nor does it have any legal consequences. Just as if there had been no jurisdictional determination, Hawkes can choose to apply for a permit, but is not obliged to do so. And just as if there had been no jurisdictional determination, Hawkes can mine the wetlands on its

18

property without a permit if it is willing to risk being subject to an enforcement action. At the culmination of the permit process or in the event the United States brings an enforcement action, Hawkes can obtain judicial review of the question of whether there are waters of the United States within the meaning of the CWA on its property. To the extent that Hawkes is vulnerable to an enforcement action, that vulnerability stems from the CWA and its implementing regulations, not from the jurisdictional determination. The fact that the Corps provided its view on jurisdiction to Hawkes neither has any legal consequence for Hawkes nor determines any rights or obligations.

The Supreme Court's decision in *Sackett v. EPA*, 132 S. Ct. 1367 (2012), does not overturn the uniform caselaw holding that jurisdictional determinations like the one here do not have legal consequences or determine rights or obligations. *Sackett* addressed an EPA administrative compliance order, not a Corps jurisdictional determination. The Court held that EPA's administrative compliance order was final based on characteristics of the order that are completely absent from jurisdictional determinations. Specifically, unlike the

19

administrative compliance order, the jurisdictional determination here (1) does not order or direct Hawkes to stop doing anything, (2) does not require Hawkes to give the Corps or EPA access to its property, (3) does not expose Hawkes to penalties for noncompliance with the determination, and (4) has no impact on Hawkes' ability to obtain a permit. The jurisdictional determination demands nothing and orders nothing.

Moreover, the jurisdictional determination is not final agency action because it does not represent the consummation of the Corps' decision-making process. The Corps has only asserted that it believes that it has regulatory jurisdiction. That threshold assertion contemplates future administrative proceedings, namely, proceedings on a permit application. Section 404 of the Act establishes a permitting program, and the jurisdictional determination here is just a first step in the permitting program. It is in the permit proceedings that Hawkes' question – can I discharge dredged or fill materials into the wetlands on my property and how – would ultimately be answered. A future permit decision would be the consummation of the Corps' decision-making

20

process; the informational jurisdictional determination challenged here is not.

Second, for similar reasons, this suit is unripe. Hawkes could gain the relief it seeks by applying for a permit, and Hawkes in fact has a permit application pending. The fact that the permit process is available indicates both that the issues are not fit for judicial review and that the hardship from withholding review is minimal. A permit may well eliminate the need for any judicial involvement. And the challenge to the denial of a permit or a permit with conditions unacceptable to Hawkes would be ripe.

## STANDARD OF REVIEW

This Court reviews de novo a dismissal for failure to state claim under Federal Rule of Civil Procedure 12(b)(6). *Butler v. Bank of Am., N.A.*, 690 F.3d 959, 961 (8th Cir. 2012). The Court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts most favorably to the plaintiff. *Id.*

21

# ARGUMENT

## I. The jurisdictional determination is not "final agency action."

"Two conditions must be satisfied for an agency action to be final" under the Supreme Court's decision in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). *Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808, 813 (8th Cir. 2006). "First, the action must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78 (citation and internal quotations omitted). "[S]econd, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.*; *see also, e.g., Sierra Club*, 446 F.3d at 813.

As the district court held and as we explain below in part A, the informational jurisdictional determination does not determine Hawkes' rights or obligations and legal consequences do not flow from it; thus it is not final agency action. In addition, as we explain in part B, the jurisdictional determination is only interlocutory; it does not mark the consummation of the Corps' decision-making process.

22

### A. The jurisdictional determination does not determine legal rights or obligations and legal consequences do not flow from it.

#### 1. The CWA, not the jurisdictional determination, imposes obligations on Hawkes.

Because Hawkes' rights and obligations are determined by the CWA, not the jurisdictional determination, the jurisdictional determination is not final agency action. The CWA prohibits unauthorized discharges of pollutants to waters of the United States. Specifically, Section 301(a) of the CWA prohibits the "discharge of any pollutant by any person" to all "waters of the United States, including the territorial seas," except as the CWA specifically allows. 33 U.S.C. §§ 1311(a), 1362(7)&(12); *see also* 33 C.F.R. § 328.3(a); 40 C.F.R. § 232.2. CWA Section 404(a) provides for permitting "for the discharge of dredged or fill material into the navigable waters at specified disposal sites." 33 U.S.C. § 1344(a); *see also* 33 C.F.R. pts. 320, 323, 325; *supra* at 3-7.

The Act thus prohibits discharges of dredged or fill material into a water of the United States without a permit. That prohibition is independent of any jurisdictional determination – that is, the prohibition exists whether or not the Corps has issued a jurisdictional

23

determination. Hawkes' property has always been subject to the CWA's restrictions; the jurisdictional determination did not change that. *See, e.g., Fairbanks North Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593-94 (9th Cir. 2008).

The jurisdictional determination does not command Hawkes to take any action, and it does not prohibit Hawkes from taking any action. It only provides the answer to a threshold question that arose when Hawkes applied for permit – does the agency think that there are jurisdictional wetlands on this property? The jurisdictional determination answers yes. JA 58. The jurisdictional determination "does not itself command [the property owner] to do or forbear from anything; as a bare statement of the agency's opinion, it can be neither the subject of 'immediate compliance' nor of defiance." *Fairbanks North Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593-94 (9th Cir. 2008) (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-40 (1980)), *cert denied*, 129 S. Ct. 2825 (2009); *see also, e.g., United States v. Los Angeles & S.L.R.,* 273 U.S. 299, 309-10 (1927) (holding unreviewable, pre-APA, an order that, among other things, did "not command the carrier to do, or to refrain from doing, anything" and that "is merely the

24

formal record of conclusions reached after a study of data collected in the course of extensive research conducted by the Commission, through its employees").

Nor does the jurisdictional determination obligate the Corps or EPA to require a permit, as Hawkes claims (p. 22). As explained above, it is the Act that requires a permit prior to the discharge of dredged or fill material in a jurisdictional wetland, not the jurisdictional determination. The Act compels the Corps to process a permit application, not to require a permit in the first place.

## 2. Requiring a permit application is not a legal consequence or obligation that establishes finality.

Hawkes incorrectly claims that the jurisdictional determination imposes an obligation or legal consequence because it requires Hawkes to obtain a Section 404 permit. Hawkes Br. 17. But, as explained above, if Hawkes' property contains jurisdictional waters, it is the CWA that requires Hawkes to obtain a Section 404 permit, not the jurisdictional determination. The jurisdictional determination challenged in this case only provides Hawkes notice that, in the view of

25

the Corps, waters of the United States are present on the subject site.
JA 58.

Even assuming that the jurisdictional determination triggered the requirement to apply for a permit (and it did not), the burden of participating in an administrative process cannot transform the jurisdictional determination into final agency action. Hawkes' permitting argument "erroneously conflates a potential *practical* effect with a *legal* consequence." *Fairbanks*, 543 F.3d at 596 (rejecting argument that the jurisdictional determination is final because it subjects the property to the CWA permitting requirements). An agency order is not final if it is one that "'does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action.'" *Am. Airlines v. Herman*, 176 F.3d 283, 288 (5th Cir. 1999) (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)). The Supreme Court has held that an agency's complaint *requiring* a company to respond in an administrative adjudication was not final agency action. *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-43 (1980); *see also, e.g., Aluminum Co. v. United States*, 790 F.2d 938, 941 (D.C. Cir. 1986) ("It is firmly established that agency

26

action is not final merely because it has the effect of requiring a party to participate in an agency proceeding.").  The jurisdictional determination here does not require Hawkes to do anything at all, and thus is even less final than the non-final action addressed in *FTC v. Standard Oil Co*.

At most, the jurisdictional determination increases the information Hawkes has available to determine how to comply with the CWA, as Hawkes now knows that the Corps currently believes that the property includes jurisdictional wetlands.  *See* Hawkes Br. 22 (arguing that the obligation to obtain a permit is "inchoate" until the Corps issues a jurisdictional determination).  After a jurisdictional determination like the one here is issued, a property owner knows that the Corps believes that there are jurisdictional wetlands on its property, at least at that time.  But that increased knowledge could just have easily been passed along to Hawkes by a private environmental consultant.  The increased knowledge at most affects the property owner's assessments of the relative costs and benefits of alternative courses of action.

27

The courts have concluded that affecting the cost and benefits of choosing a course of action does not create the sort of legal effect on a party's rights that can render agency action "final." For example, the District of Columbia Circuit has explained that the "practical consequences" that attach when a private party learns that the government believes that certain legal obligations apply to the party does not render the government action final. *See Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*, 324 F.3d 726, 732-33 (D.C. Cir. 2003) (addressing consequences from letter from agency requesting that manufacture undertake a voluntary compliance plan). Because these practical "consequences attach to any parties who are the subjects of Government investigations and believe that the relevant law does not apply to them," the consequences do not indicate that an agency's preliminary action is final. *Id.* at 732; *see also Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13-16 (D.C. Cir. 2005) (incentive to comply voluntarily with agency's guidance is insufficient to establish legal consequences under *Bennett* when the underlying statutory violation would still have to be established in an enforcement action); *cf. Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 811

28

(2003) (rejecting argument that "mere uncertainty as to the validity of a legal rule constitutes a hardship for purposes of the ripeness analysis" because "courts would soon be overwhelmed with requests for what essentially would be advisory opinions"). At bottom, it is the Act itself that provides for civil and criminal penalties; the informational jurisdictional determination does not trigger application of those penalties.

> ### 3. Hawkes can challenge CWA jurisdiction in court either after a permit decision or in response to an enforcement action, just not now.

Holding that the jurisdictional determination is not final does not impair Hawkes' ability to challenge the Corps' finding of CWA jurisdiction. *Fairbanks,* 542 F.3d at 594-95. Hawkes can bring a challenge to the Corps' or EPA's finding of CWA jurisdiction at potentially three times, just not now.

First, the Corps' final permit decision on Hawkes' pending Section 404 permit application would constitute final agency action under the APA. Hawkes could challenge the Corps' finding of CWA jurisdiction in a lawsuit seeking review of the permit decision, assuming Hawkes first exhausted its administrative remedies. JA 63 ("The parties do not

29

dispute that Plaintiffs here could obtain judicial review by pursuing the permitting process, as Corps regulations expressly make the final permit decision reviewable under the APA."). The court would then apply the APA standard of review and assess whether the Corps' permit decision, including its finding of jurisdiction, was arbitrary or capricious. *Fairbanks*, 543 F.3d at 594-95; *see also, e.g., Nat'l Wildlife Fed'n v. Whistler*, 27 F.3d 1341, 1344 (8th Cir. 1994) (holding that, in challenge to Corps' permit decision, court should review whether decision was arbitrary and capricious); *Bowles v. U.S. Army Corps of Eng'rs*, 841 F.2d 112, 116 & n.20 (5th Cir. 1988) (holding that, in challenge to permit decision and CWA jurisdiction, court should review whether Corps' determination was arbitrary and capricious).

Second, if Hawkes proceeds to discharge dredged or fill materials into wetlands without first obtaining a Section 404 permit and EPA issues a compliance order like the one in *Sackett*, the Supreme Court has held that such an order is reviewable final agency action under the APA. Hawkes could contest CWA jurisdiction in a challenge to the compliance order. *Sackett v. EPA*, 132 S. Ct. 1367, 1371-74 (2012).

Appellate Case: 13-3067    Page: 41    Date Filed: 12/23/2013 Entry ID: 4108467

Third, Hawkes could assert its arguments about CWA jurisdiction as a defense to an enforcement action. If Hawkes discharges dredged or fill material into its wetlands without first obtaining a Section 404 permit and the United States or a citizen brings an enforcement action against Hawkes, then Hawkes could assert its arguments about CWA jurisdiction as a defense to the enforcement action. 33 U.S.C. §§ 1319, 1365; 33 C.F.R. § 326.3(c); *United States v. Bailey*, 571 F.3d 791, 796-803 (8th Cir. 2009); *Fairbanks*, 543 F.3d at 594 & n.9. In the enforcement action, the United States (or the citizen plaintiff) would have to prove by a preponderance of the evidence that the filled areas were subject to the CWA (as well as that Hawkes had discharged dredged or fill material without a permit). The jurisdictional determination does not somehow establish a "prima facie" violation of the Act, as Hawkes claims. Hawkes Br. 16. In fact, the preponderance of the evidence standard that the United States would have to meet in an enforcement action is more onerous than the arbitrary and capricious APA standard of review that Hawkes seeks to have applied to the jurisdictional determination now.[4]

_____

[4]    And even if Hawkes were to obtain review of the Corps'

Appellate Case: 13-3067    Page: 42    Date Filed: 12/23/2013 Entry ID: 4108467

In all of these scenarios, Hawkes will have the opportunity to argue that the Corps (or EPA) lacks CWA jurisdiction over its property. Hawkes just cannot do so now because the jurisdictional determination imposes neither obligations nor legal consequences.

### 4. Every court to have addressed whether a jurisdictional determination is final agency action has held that it is not.

All of the cases addressing the finality of a jurisdictional determination that there are waters of the United States on a property have held that the determination is not a final agency action under the APA. The Ninth Circuit has addressed this issue in a published opinion, holding that a jurisdictional determination is not a final agency action because it "is not an action by which rights or obligations have been determined, or from which legal consequences will flow." *Fairbanks*, 543 F.3d at 593 (citations and internal quotations omitted); *see also* JA 64-69 (relying on *Fairbanks*). *Fairbanks* explained that it is the CWA and not the jurisdictional determination that imposes

---

jurisdictional determination now, that would only answer the question of whether the Corps' conclusion is arbitrary or capricious on the administrative record before the Corps. Nothing would prevent the Corps, EPA, or a citizen from later making a different record (even if conditions on the ground were unchanged) and bringing an enforcement action if Hawkes proceeded to fill its wetlands without a permit.

32

obligations: "[a]t bottom, [the property owner] has an obligation to comply with the CWA." 543 F.3d at 594. "If its property contains waters of the United States, then the CWA requires [the owner] to obtain a Section 404 discharge permit." *Id.* On the other hand, "if its property does not contain those waters, then the CWA does not require [the owner] to acquire that permit. In either case, [the owner's] legal obligations arise directly and solely from the CWA, and not from the Corps' issuance of an approved jurisdictional determination." *Id.* The Court explained that "the land is what and where it is. The Corps does not alter that physical reality or the legal standards used to assess that reality simply by opining that a particular site contains waters of the United States." *Id.*; *see also id.* at 595 n.10 (jurisdictional determination imposes no new or additional legal obligations; it "at most simply reminds affected parties of existing duties . . . and commands nothing of its own accord" (citation and internal quotations omitted)).

The Fourth and Fifth Circuits have reached the same result in unpublished opinions. *Greater Gulfport Props., LLC v. U.S. Army Corps of Eng'rs*, 194 Fed. Appx. 250, 2006 WL 2460884 (5th Cir. Aug. 23,

33

2006); *Comm'rs of Public Works v. United States*, 30 F.3d 129, 1994 WL 399118 (4th Cir. 1994).

The district courts that have addressed this issue have all reached the same result as well: a jurisdictional determination that there are waters of the United States (including wetlands) on a property is not a final agency action. For example, in *Belle Co., LLC v. United States Army Corps of Eng'rs*, No. 12-247-BAJ-SCR, 2013 WL 773730, at \*2-4 (M.D. La. Feb. 28, 2013) (unpublished, appeal pending in Fifth Circuit, No. 13-30262), a district court recently held that "[w]hen considering the effect of the approved jurisdictional determination in the instant case, the Court finds that the Corps' decision 'imposes no new or additional legal obligations,' but simply 'reminds' [the property owner] of existing duties under the CWA." *Id.* at \*3 (quoting *Fairbanks*, 543 F.3d at 595 n.10). Similarly, in *St. Andrews Park, Inc. v. U.S. Dep't of the Army Corps of Eng'rs*, 314 F. Supp. 2d 1238 (S.D. Fla. 2004), a district court explained that "the legal rights and obligations of the parties [are] precisely the same the day after [a] jurisdictional

34

determination was issued as they were the day before." *Id.* at 1244-45

(citation and internal quotation omitted).[5]

> **5.** ***Sackett v. EPA* addresses an EPA administrative compliance order, which the Supreme Court found final because of consequences that a jurisdictional determination does not have.**

The Supreme Court's decision in *Sackett v. EPA*, 132 S. Ct. 1367

(2012), does not support Hawkes' argument that the Corps'

jurisdictional determination establishes legal rights or obligations or

has legal consequences. In *Sackett*, the Supreme Court addressed an

EPA administrative compliance order, not a Corps jurisdictional

determination. *Id.* at 1371-72. The Court determined that the

administrative compliance order was final agency action because the

---

[5] *See also Industrial Highway Corp. v. Danielson*, 796 F. Supp. 121, 128 (D.N.J. 1992) (Corps determination was not final agency action where, *inter alia*, it placed no obligations on plaintiff in addition to those already imposed by CWA); *Child v. United States*, 851 F. Supp. 1527, 1535 (D. Utah 1994) (Corps' statements concerning jurisdiction had no direct impact on plaintiffs' conduct and did not require any immediate compliance); *Hampton Venture No. One v. United States*, 768 F. Supp. 174, 175 (E.D. Va. 1991) (assertion of jurisdiction did not, without more, deny plaintiff the ability to carry out its plans); *Lotz Realty Co. v. United States*, 757 F. Supp. 692, 695-98 (E.D. Va. 1990) (Corps' determination of jurisdiction and that individual permit was required was not final agency action); *Acquest Wehrle LLC v. United States*, 567 F. Supp. 2d 402, 409-11 (W.D.N.Y. 2008) (EPA determination of jurisdiction over wetlands was not final agency action).

35

order determined obligations and had legal consequences that, as we show below, jurisdictional determinations do not determine or have.

As an initial matter, it is important to understand the administrative compliance order at issue in *Sackett*. When EPA finds "that any person is in violation" of the CWA, the agency may "issue an [administrative compliance] order requiring such person to comply with such section or requirement" of the Act. 33 U.S.C. § 1319(a)(3). If the recipient of an administrative compliance order disobeys the order, the United States may choose to initiate judicial enforcement action for relief on the underlying violation of the CWA that is the basis for the compliance order. 33 U.S.C. § 1319(b). If the district court determines that the CWA was violated, it can then impose civil penalties both for violation of the Act and for violation of the administrative compliance order. 33 U.S.C. § 1319(d); *see also Sackett*, 132 S. Ct. at 1372 (The order "according to the Government's current litigation position . . . exposes the Sacketts to double penalties in a future enforcement proceeding.").

In addition, the administrative compliance order in *Sackett* ordered the property owners to "'restore' their property according to an

36

agency-approved Restoration Work Plan." 132 S. Ct. at 1371. It required the property owners to "give the EPA access to their property and to 'records and documentation related to the conditions at the site.'" *Id.* The order also "severely limit[ed] the Sacketts' ability to obtain a permit for their fill from the [Corps]." *Id.* at 1372 (citing 33 C.F.R. § 326.3(e)(1)(iv)).

None of these characteristics is found in the jurisdictional determination here. First, the jurisdictional determination is not an "order." It does not direct Hawkes to do anything. The *Sackett* order on the other hand ordered the Sacketts to stop filling and to restore their property. Second, the jurisdictional determination does not require Hawkes to give the Corps or EPA access to its property; the *Sackett* order did. *Id.* at 1371. Third, the jurisdictional determination here does not expose Hawkes to penalties for noncompliance with the determination; the *Sackett* order exposed the Sacketts to penalties for violating the order in addition to penalties for violating the Act. *Id.* at 1372. Fourth, the jurisdictional determination has no impact on Hawkes' ability to obtain a permit; the *Sackett* order "severely limit[ed] the Sacketts' ability to obtain a permit for their fill from the [Corps]"

37

because of a Corps regulation, 33 C.F.R. § 326.3(e)(1)(iv)). 132 S. Ct. at 1372.

Because of these differences and because the jurisdictional determination simply offered the Corps' opinion on whether there is CWA jurisdiction over the wetlands on Hawkes' property, there was no "strong-arming" of a regulated party into voluntary compliance without the opportunity for judicial review, as the Supreme Court believed there was in *Sackett*. 132 S. Ct. at 1374. The jurisdictional determination demands nothing and orders nothing.

Perhaps most telling is what the Supreme Court does not say in its opinion. As Hawkes points out, the administrative compliance order at issue in *Sackett* contained a determination by EPA that there were wetlands within CWA jurisdiction. Hawkes Br. 11. The Supreme Court in the background section of the opinion noted as much, quoting the order's finding and conclusion that the property "contains wetlands within the meaning of 33 C.F.R. § 328.4(8)(b); the wetlands meet the criteria for jurisdictional wetlands in the 1987 'Federal Manual for Identifying and Delineating Jurisdictional Wetlands.'" 132 S. Ct. at 1370. But the Supreme Court, in its analysis of finality, does not

38

mention that the EPA order determined that there was jurisdiction over the wetlands on the Sackett's property. Thus nothing in the *Sackett* opinion even hints that a self-standing jurisdictional determination is a final agency action, as the Supreme Court does not even cite the finding of jurisdiction in the order as a relevant consideration in its finality analysis.[6]

> **6. The Supreme Court's decisions in *Port of Boston* and *Frozen Foods Express* and this Court's decision in *Iowa League of Cities* address the finality of rules of general applicability, not at all like the Corps' jurisdictional determination.**

Hawkes argues that two earlier Supreme Court precedents addressing agency rules of general applicability governing the fees charged at a maritime terminal and the structure of the food transportation industry indicate that the jurisdictional determination here fixes rights or obligations. Hawkes Br. at 19-21. Neither *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62 (1970), nor *Frozen Food Express v. United States*, 351 U.S. 40

---

[6]  In an attempt to fill this gap, Hawkes points to Justice Ginsburg's concurring opinion, which notes that EPA had made a jurisdictional determination. 132 S. Ct. at 1375 (Ginsburg, J., concurring). But no other Justice signed on to Justice Ginsburg's opinion, and the majority opinion does not mention that the EPA order determined that there was CWA jurisdiction in its analysis of finality.

39

(1956), is relevant here, however. Both cases stand for the proposition that agency orders establishing rules of general applicability with legal consequences for participants in the regulated industry are final. The jurisdictional determination does not have any sort of similar legal consequence. JA 69 (district court: "Nor did [the jurisdictional determination] affect the legal standard used by agencies and courts in determining where the CWA applies.").

First, *Port of Boston* held that an order by the Federal Maritime Commission that determined certain cargo fees was a final agency action. In that case, the operator of the Port of Boston Marine Terminal changed how it charged a tariff in order to increase the daily fee for cargo left on a pier or wharf due to a longshoreman strike. 400 U.S. at 64. Shippers refused to pay the increased charges, arguing that the increased tariff could not be effective without the approval of the Federal Maritime Commission. *Id.* at 64-65. The district court stayed the proceedings to allow the Commission to rule on the validity of the charge. *Id.* at 65. "[A]fter a full evidentiary hearing, the Commission issued a report and order concluding that prior approval [of the tariff change] was not necessary" and approving the tariff change in part. *Id.*

Appellate Case: 13-3067    Page: 51    Date Filed: 12/23/2013 Entry ID: 4108467

The Supreme Court held that the order was "final" under 28 U.S.C. § 2342, which provided for exclusive jurisdiction in the court of appeals for review of "final orders of the Federal Maritime Commission." *Id.* at 69-71. The Court held that the order was final because "the Commission's action was expected to and did have legal consequences." *Id.* at 71. The order determined the validity of tariff fees at the Port of Boston, *id.* at 64-65, thus having a legal consequence for both the shippers and the port operator by determining what fee could be charged. In contrast, the jurisdictional determination here has no similar consequence. It does not order anything; it does not determine any fees as in *Port of Boston*. To be sure, the Court in *Port of Boston* noted that the Commission order did not need to have "independent coercive effect" in order to be final, as Hawkes points out. *Id.* at 71; Hawkes Br. 19. But here, there is nothing akin to the legal consequence in *Port of Boston*. The order at issue in *Port of Boston* was a rule of general applicability that established a legally binding standard for a class of parties – in that case, maximum fees terminal owners could charge shippers. The jurisdictional determination here does nothing similar. *Port of Boston* is thus inapposite.

41

Second, in *Frozen Food Express* the Supreme Court addressed an Interstate Commerce Commission (ICC) "order" specifying the agricultural commodities that trucks could carry without an ICC certificate or permit. 351 U.S. at 41-42. The Court found that the order was final and reviewable because it was "the basis for carriers in ordering and arranging their affairs" and "sets the standard for shaping the manner in which an important segment of the trucking business will be done." *Id.* at 44. The jurisdictional determination here is not a rule of general applicability and it does not shape the manner in which an important segment of an industry will operate. *Frozen Food Express* is thus inapposite.

In addition, the Court in *Frozen Food Express* explained that the different ICC order at issue in *United States v. Los Angeles & S.L.R. Co.*, 273 U.S. 299, 309-10 (1927) – an order much more similar to the jurisdictional determination here – was not final. Unlike the ICC order in *Frozen Food Express*, "the 'order' [in *Los Angeles & S.L.R.*] was no more than a report of an investigation which might never be the basis of a proceeding before the Commission or a court." 351 U.S. at 43. The Court, quoting from *Los Angeles & S.L.R.*, explained that:

42

> The so-called "order" here complained of is one which does not command the carrier to do, or to refrain from doing, anything; which does not grant or withhold any authority, privilege, or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation. This so-called order is merely the formal record of conclusions reached after a study of data collected in the course of extensive research conducted by the Commission, through its employees. It is the exercise solely of the function of investigation.

*Id.* (quoting 273 U.S. at 309-10). As in *Los Angeles & S.L.R.*, a jurisdictional determination "does not command" anyone to do anything and is just a "formal record of conclusions reached after a study of data collected in the course of extensive research." *See also, e.g., Golden and Zimmerman, LLC v. Domench*, 599 F.3d 426, 433 (4th Cir. 2010) (explaining that *Frozen Food Express* did not apply to agency guideline informing regulated party of agency's position on lawfulness).

In addition to *Port of Boston* and *Frozen Food Express*, Hawkes cites to this Court's decision in *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013), holding that letters issued by EPA headquarters constituted the promulgation of effluent limitations under the CWA and were reviewable under the CWA section providing for direct review of such promulgations in the court of appeals. Hawkes Br. at 24-25. This

43

Court, however, held that the APA's finality requirement did not apply because the action at issue was "made reviewable by statute." *Id*. at 863 n.12 (quoting 5 U.S.C. § 704). The Court in *Iowa League of Cities* thus did not even address the two finality conditions set down in *Bennett v. Spear*. In any event, just as in *Port of Boston* and *Frozen Food Express*, the Court in *Iowa League of Cities* viewed EPA as promulgating a rule of general applicability with binding effect on the regulated industry. *Id*. at 861-65. In contrast, the jurisdictional determination here does not announce any sort of rule, let alone one with binding effect.

*   *   *

For all of these reasons, the Corps' jurisdictional determination does not determine legal rights or obligations, and legal consequences do not flow from it. The jurisdictional determination is informational. It does not impose any obligations on Hawkes; it is the CWA itself that imposes obligations on Hawkes. Hawkes thus cannot demonstrate that the jurisdictional determination is a final agency action under the APA.

44

**B. The Corps' jurisdictional determination does not mark the consummation of the agency's decision-making process.**

The other prong of the finality analysis is whether the action "mark[s] the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78 (citation and internal quotation omitted). The Court, however, need not address this prong because, as explained above, the informational jurisdictional determination does not determine legal rights or obligations and legal consequences do not flow from it. This Court's analysis can thus stop there.[7]

In any event, the jurisdictional determination does not mark the consummation of the agency's decision-making process. While a jurisdictional determination may represent the Corps' view on the issue of CWA jurisdiction, that view is only the beginning of the administrative process, not the end. Parties seek jurisdictional determinations to help them navigate potential permitting issues. *See*

---

[7] The district court held that the jurisdictional determination did mark the consummation of the agency's decision-making process. JA 66-68. But this Court may affirm the district court's judgment on any basis supported by the record. *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934-35 (8th Cir. 2012).

45

*Fairbanks*, 543 F.3d at 589-90 (property owner asked for jurisdictional determination in order to determine if it needed to seek a permit or could fill wetlands "without further ado"). A jurisdictional determination like the one at issue here entails the possibility of further administrative proceedings – that is, proceedings on a permit application. *St. Andrews Park*, 314 F. Supp. 2d at 1244-45; *Child*, 851 F. Supp. at 1535; *see also Standard Oil*, 449 U.S. at 241 (where an administrative complaint initiated adjudicative proceedings, the complaint represented only a "threshold determination that further inquiry is warranted," and its allegations were not "definitive" because they could be challenged in the proceeding).

Moreover, a jurisdictional determination is not the Corps' final position on jurisdiction, as Hawkes argues (p. 19). The jurisdictional determination is not set in stone if "new information" indicates that revisiting the issue is appropriate. A regulatory guidance letter from the Corps explains that jurisdictional determinations are valid "unless new information warrants revision." JA 43. If Hawkes submits new information in the permitting process, the Corps will consider that information and decide whether or not to revisit the issue of

46

jurisdiction. And if the physical conditions change, the Corps will revisit the question of jurisdiction during permitting. *See* 65 Fed. Reg. 16,486, 16,488 (March 28, 2000); 33 C.F.R. § 328.5 (describing changes in reach of waters of the United States due to, for example, subsidence of land). Thus, the Corps' response to Hawkes' inquiry about jurisdiction reflects the Corps' assessment of its CWA regulatory jurisdiction given the site's physical conditions and the record at that time.

The Corps' decision-making process is also not complete because, if Hawkes follows through on its permit application, it will have another chance for an administrative appeal, in which Hawkes can again raise the issue of jurisdiction. When the Corps makes a final permit decision, the permit applicant can then administratively appeal the permit denial or the declined permit to the Corps' division engineer. 33 C.F.R. pt. 331; *supra* at 9. The applicant can again challenge jurisdiction, even if the applicant previously appealed the jurisdictional determination. The division engineer, who decides the appeal, reviews the jurisdictional determination again. 33 C.F.R. § 331.5(a)(2) ("The reasons for appealing a permit denial or a declined permit may include

47

jurisdiction issues, whether or not a previous approved JD was appealed.").

It becomes clearer that the jurisdictional determination is not the consummation of the Corps' decision-making process when one considers what the property owner wants to accomplish. The property owner wants to fill or otherwise disturb wetlands on its property. Here, for instance, Hawkes wants to remove peat from its property, discharging dredged or fill materials into wetlands in the process. The jurisdictional determination does not answer the property owner's real question – can I disturb the wetlands on my property? That question will only be answered either by the Corps' response to a permit application or by the result of an enforcement action, if the property owner proceeds to fill wetlands without a permit. The jurisdictional determination answers only the predicate question of whether the wetlands fall within the jurisdiction of the CWA.

While Corps regulations state that a jurisdictional determination constitutes "a Corps final agency action," 33 C.F.R. § 320.1(a)(6), the Corps does not interpret Section 320.1(a)(6) as establishing that jurisdictional determinations are "final" within the meaning of the APA.

The Corps' interpretation receives substantial deference: "It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail. When an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation." *Decker v. Northwest Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) (internal quotations omitted, quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997) and *Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 880 (2011))). This deference is due "even when that interpretation is advanced in a legal brief." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012); *see also, e.g., Chase Bank*, 131 S. Ct. at 880; *Auer*, 519 U.S. at 461-62.

As an initial matter, the Corps' interpretation is consistent with the rulemaking establishing 33 C.F.R. § 320.1(a)(6). In the preamble to this regulation, the Corps explained that this provision was intended to clarify that "the public can rely on [a] determination as a Corps final agency action." The Corps does not state, however, that a determination is final pursuant to the APA. 51 Fed. Reg. 41,206, 41,207 (Nov. 13, 1986).

Appellate Case: 13-3067    Page: 60    Date Filed: 12/23/2013 Entry ID: 4108467

In a later rulemaking, the Corps noted that it did not believe that jurisdictional determinations such as the one at issue here should be immediately challengeable in federal court. Instead, such a suit would not be ripe "until a landowner who disagrees with a JD has gone through the permitting process." 65 Fed. Reg. at 16,488. The Corps also explained that "JDs are not necessarily 'final' even as an administrative matter," noting that "[p]hysical circumstances can change over time, and the scope of regulatory jurisdiction" might change as well. *Id.* "Accordingly, we have decided not to address in this rulemaking when a JD should be considered a final agency action." *Id.* As the Ninth Circuit explained in discussing this rulemaking, "[t]he Corps has expressly declined to address 'in . . . rulemaking when a [jurisdictional determination] should be considered a final agency action' for purposes of judicial review." *Fairbanks*, 543 F.3d at 592 n.6 (quoting 65 Fed. Reg. at 16,488); *but see id.* at 591-93 (relying on Section 320.1(a)(6) to conclude that the jurisdictional determination was the consummation of the agency's decision-making process).

Moreover, even if the Corps intended to indicate that every such determination is subject to immediate judicial review (which it clearly

50

did not), an agency declaration that jurisdictional determinations are final does not demonstrate that any such determination actually meets the two *Bennett* criteria governing finality for purposes of the APA. *Route 26 Land Dev. Ass'n v. United States*, 753 F. Supp. 532, 539 (D. Del. 1990), *aff'd*, 961 F.2d 1568 (3d Cir. 1992); *see also Hampton Venture*, 768 F. Supp. at 175; *Lotz Realty*, 757 F. Supp. at 696. As the Fifth Circuit has explained, even if an agency has been delegated the authority "only to issue final agency decisions," that does not establish APA finality. The reviewing court must focus "on the specific characteristics of the agency action," not on the agency's authority to make "final" decision. *Exxon Chems. Am. v. Chao*, 298 F.3d 464, 467 n.2 (5th Cir. 2002). An agency cannot make its action final under the APA simply by labeling it as final. Instead, finality depends on the *Bennett* factors, not the agency's label. That is especially clear for the legal consequences and rights or obligations prong of *Bennett* because even if the agency declares its decision making process to be complete and thus final, that does not establish that the decision has a legal consequence or determines a right or obligation.

51

In *Fairbanks*, followed by the district court here (JA 64-69), the Ninth Circuit concluded that a jurisdictional determination "announces the Corps' considered, definite and firm position about the presence of jurisdictional wetlands," and thus "marks the consummation of the agency's decisionmaking process as to that issue." 543 F.3d at 593. But focusing on "*that issue*" removes the jurisdictional determination from its regulatory context. In context, the informational jurisdictional determination does not answer the question of whether filling wetlands is or is not permissible; it is just an initial step on the way to answering that question. And, as explained above, it is a preliminary answer, subject to revision if new information is submitted or conditions change by the time a permit is sought.

## II. The jurisdictional determination is not ripe for review.

For many of the same reasons that the jurisdictional determination is not a final agency action under the APA, it is not ripe for judicial review. The ripeness inquiry is intended to prevent the courts "from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and

52

its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Determining whether an agency action is ripe for judicial review generally requires the court to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Id.* at 148-52; *see also, e.g., Iowa League of Cities*, 711 F.3d at 867 ("A party seeking review must show both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" (quoting *Pub. Water Supply Dist. No. 10 of Cass Cnty. v. City of Peculiar,* 345 F.3d 570, 572-73 (8th Cir. 2003) and *Abbott Labs*). This Court has taken the view that "[b]oth of these factors are weighed on a sliding scale, but each must be satisfied 'to at least a minimal degree.'" *Iowa League of Cities*, 711 F.3d at 867 (quoting *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1039 (8th Cir. 2000)).

The fitness factor "rests primarily on whether a case would 'benefit from further factual development,' and therefore cases presenting purely legal questions are more likely to be fit for judicial review." *Id.* (quoting *Pub. Water Supply*, 345 F.3d at 573). "The

53

hardship factor looks to the harm parties would suffer, both financially and as a result of uncertainty-induced behavior modification in the absence of judicial review." *Id.* (citing *Neb. Pub. Power Dist.*, 234 F.3d at 1038). To establish hardship, "the injury must be certainly impending," and the court weighs "[t]he immediacy and the size of the threatened harm." *Id.* (citations omitted).

An agency action may be final without being ripe. *See Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 812 (2003). Thus, even if this Court were to conclude that the Corps' jurisdictional determination is final agency action within the meaning of the APA, the district court's dismissal can be upheld on ripeness grounds.[8]

The Corps' jurisdictional determination is not fit for judicial review. The Corps issued a jurisdictional determination indicating that Hawkes' property contains waters of the United States. Again, Hawkes has a permit application pending for authorization to discharge dredged or fill material on that property. It is therefore possible that the Corps will grant Hawkes a permit that satisfies Hawkes desires. Hawkes'

---

[8]     The district court did not reach the issue of ripeness. This Court may affirm the district court's judgment on any basis supported by the record. *Christiansen*, 674 F.3d at 934-35.

Appellate Case: 13-3067     Page: 65     Date Filed: 12/23/2013 Entry ID: 4108467

claim is thus not ripe because "it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580-81 (1985), which was quoting 13A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3532 (1984)).  To be sure, review of the jurisdictional determination under the APA would be based on the administrative record before the Corps and that record could be compiled now.  But because Hawkes could obtain the result it seeks – permission to mine peat – this suit is not ripe.  *Route 26 Land Dev. Ass'n*, 753 F. Supp. at 540-41.

Moreover, the Corps has explained that jurisdictional determinations "are not necessarily 'final' even as an administrative matter" – if, the permit applicant submits new information or physical circumstances change – and "are not ripe for review until a landowner who disagrees with a [jurisdictional determination] has gone through the permitting process."  65 Fed. Reg. at 16,488.  The Corps explained:

> [E]ven final agency actions must be "ripe" before a court can review them.  In the past, a number of courts have held that jurisdictional determinations are not ripe for review until a landowner who disagrees with a [jurisdictional

55

determination] has gone through the permitting process. The Federal Government believes this is the correct result, and nothing in today's rule is intended to alter this position. Ultimately, ripeness is a question that only the reviewing court can answer, and the Agency cannot satisfy ripeness concerns simply by declaring that an agency action is "final."

*Id.*

As to the hardship factor, as explained above (pp. 23-25), it is the statute and not the jurisdictional determination that imposes the alleged hardship on Hawkes. It is Section 404 of the Act, 33 U.S.C. § 1344, that establishes the permitting regime that prohibits the discharge of dredged or fill materials into waters of the United States, including wetlands, without a permit. The jurisdictional determination does not establish the permit requirement; the statute does. And the jurisdictional determination does not change the law by announcing a binding new rule. *See, e.g., Iowa League of Cities,* 711 F.3d at 861-65. The jurisdictional determination addresses only the status of the wetlands on Hawkes' property, leaving the details of what can or cannot be done on the property to be sorted out during the rest of the permit process. Hawkes should be pursuing that process rather than prematurely burdening the federal courts. The permitting process itself does not establish that injury, as explained above (pp. 25-29). Hawkes

56

does not face any "certainly impending" injury that would justify finding the jurisdictional determination ripe. *Id.* at 867.

For these reasons, Hawkes' challenge to the jurisdictional determination is not ripe.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

ROBERT G. DREHER
  Assistant Attorney General

/s/ Robert J. Lundman
DANIEL R. DERTKE
JENNIFER SCHELLER NEUMANN
ROBERT J. LUNDMAN
  U.S. Department of Justice
  Environment & Natural Resources Div.
  P.O. Box 7415
  Washington, DC 20044
  Phone: (202) 514-2496
  Fax: (202) 353-1873
  robert.lundman@usdoj.gov

December 20, 2013
90-5-1-5-19701

57

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a) AND LOCAL RULE 28A(h) (VIRUS SCANNING)

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,445 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Office Word 2007.

3.  I have scanned the pdf of the brief that is being filed electronically for viruses and it is virus free.

/s/ Robert J. Lundman
ROBERT J. LUNDMAN
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 7415
Washington, DC 20044
Phone: (202) 514-5316
Fax: (202) 353-1873
robert.lundman@usdoj.gov

Appellate Case: 13-3067     Page: 69     Date Filed: 12/23/2013 Entry ID: 4108467

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013, the foregoing

document was served on all parties or their counsel of record through

CM/ECF.

/s/ Robert J. Lundman
ROBERT J. LUNDMAN
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 7415
Washington, DC 20044
Phone: (202) 514-5316
Fax: (202) 353-1873
robert.lundman@usdoj.gov

59